Cite as 2023 Ark. App. 58

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-22-479

|  |  |
|---|---|
| | **Opinion Delivered** February 15, 2023 |
| EUGENE QUACKENBUSH<br>APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT<br>[NO. 36CR-20-116] |
| V. | |
| | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | |
| | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Eugene Quackenbush was found guilty of three felonies and now appeals, arguing that the circuit court erred in denying his motion to dismiss on speedy-trial grounds and in refusing to admit evidence at the hearing on the motion to dismiss. We affirm.

On 30 March 2020, the State filed an information charging Quackenbush with kidnapping, terroristic threatening, and attempted murder. The State alleged that Quackenbush had kidnapped his former son-in-law, Heath Melton, by forcing Melton into a vehicle at gunpoint and had later fired the gun at Melton as he escaped while the vehicle was stopped at an intersection.

On 16 March 2022, Quackenbush moved to dismiss all charges due to lack of a speedy trial. He asserted that over 756 days had passed since his arrest. After a hearing on the matter, the circuit court denied the motion. The case proceeded to trial, and a jury

found Quackenbush guilty on all charges.  The court imposed an aggregate term of thirteen years' imprisonment, and Quackenbush has timely appealed.

Arkansas Rule of Criminal Procedure 28 (2022) governs speedy-trial determinations. A defendant must be brought to trial within twelve months unless there are periods of delay that are excluded under Rule 28.3.  Ark. R. Crim. P. 28.1; *Vasquez v. State*, 2018 Ark. App. 241, 548 S.W.3d 828.  The twelve-month period for bringing an accused to trial begins to run on the date the information is filed or the date of arrest, whichever occurs first. Ark. R. Crim. P. 28.2(a); *Vasquez*, *supra.*  If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution.  *State v. Crawford*, 373 Ark. 95, 281 S.W.3d 736 (2008) (citing Ark. R. Crim. P. 30.1).

When a defendant makes a prima facie showing of a speedy-trial violation, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified.  *Crawford*, *supra.*  A prima facie case for a speedy-trial violation is made when there is a period of delay beyond twelve months from the date of the charge. *Id.*  On appeal, we conduct a de novo review to determine whether specific periods of time are excludable under speedy-trial rules.  *Id.*

I.  *Admission of Evidence*

For his first point, Quackenbush argues that the circuit court abused its discretion in refusing to admit evidence that he proffered at the hearing on his motion to dismiss.  Matters regarding the admissibility of evidence are left to the sound discretion of the circuit court, and evidentiary rulings will not be reversed absent an abuse of discretion.  *Montgomery v.*

2

*State*, 2022 Ark. App. 329, 653 S.W.3d 21.  Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.  *Id*.  Furthermore, an evidentiary ruling will not be reversed unless the appellant can demonstrate that he was prejudiced by the ruling, as prejudice is not presumed.  *Tilmon v. State*, 2022 Ark. App. 291, 646 S.W.3d 286.

As part of his motion to dismiss below, Quackenbush explained that his jury trial, which had been set for 1–3 September 2021, was continued by the circuit court to 19–21 January 2022, and later to 12–14 April 2022.  In both orders, the circuit court cited the "dramatic spread" of COVID-19 and its variants; in the order resetting the trial for January 2022, the court specifically cited the high level of infections in Johnson County.  Quackenbush asserted that other jury trials were held during this time and that the delays were not justified.  In response to Quackenbush's motion to dismiss, the State asserted in part that "the pandemic had a halting effect on jury trials in Johnson County, [and] after the March 17, 2020 per curiam there were no jury trials for the remainder [of] 2020 and for the entire year of 2021 in Division I and IV."

At the hearing, Quackenbush sought to introduce nineteen exhibits consisting of sentencing orders, jury instructions, and other orders from cases in Pope County and Franklin County that had been entered between July 2021 and March 2022.  The State objected on relevancy grounds, and Quackenbush explained that the documents were relevant because they showed that jury trials had been held in other counties within the Fifth Circuit during the relevant time period.  The point in introducing the documents was

3

to show that while there may not have been trials in Johnson County, the State had not shown that this was due to COVID-19 concerns, which had been the stated reason for the two continuances. The circuit court sustained the State's objection.

On appeal, Quackenbush asserts that the proffered exhibits, which proved jury trials had been held in neighboring counties, were relevant to the question of whether jury trials could have been safely conducted in Johnson County during the relevant time periods, and thus, whether the presumption that the delays had been for good cause had been rebutted. He also contends that the courtroom in Johnson County is significantly larger than the courtrooms in Pope and Franklin Counties, which makes it more probable that his jury trial could have been conducted in Johnson County as originally scheduled.

The State first responds that Quackenbush waived any objection to the two trial continuances because he waited too long to challenge them. The State explains that Quackenbush did not challenge the continuances on speedy-trial grounds until filing his speedy-trial motion in March 2022—a full two months after the final continuance order and nearly seven months after the first continuance order. *See, e.g.*, *Lewis v. State*, 307 Ark. 260, 819 S.W.2d 689 (1991) (objection not timely when appellant waited for over four months to object to an order excluding time for speedy-trial purposes).

Second, the State asserts that the fact that jury trials occurred in other counties does not make it more or less likely that the circuit court's decision to continue Quackenbush's trial based on the number of COVID-19 cases in Johnson County was inappropriate. Different counties could have had different rates of infection, and one judge may have been

4

more or less risk averse than another when it came to holding trials during the COVID-19 pandemic.

Finally, the State argues that Quackenbush cannot demonstrate that he was prejudiced by the exclusion of the exhibits. In addition to having waived his objections (as explained above), rendering the exhibits unnecessary, he was able to present his argument to the circuit court even without the admission of the exhibits. He made the circuit court aware that trials were held by judges in other counties in the Fifth Circuit during the relevant time frame, but the circuit court disagreed that this information affected its decision to continue Quackenbush's trial. The State concludes that "[b]ecause Quackenbush had his point heard and considered, there was no prejudice from the Circuit Court's decision to exclude the proffered exhibits."

Quackenbush replies that contrary to the State's assertion, his failure to object to the continuance orders did not constitute a waiver of his objections because he did not have an opportunity to timely object. The court did not convene a hearing before sua sponte entering the orders continuing the case. *See, e.g.*, *Robertson v. State*, 2019 Ark. App. 73, 568 S.W.3d 323 (holding that defendant did not waive his right to move for dismissal based on speedy-trial violation arising from sua sponte continuance, where no hearing on the matter took place and there was no indication that defense attorney had an opportunity to object to the excluded period).

We hold that Quackenbush has not demonstrated prejudice from the circuit court's decision to exclude the evidence. He had the opportunity to fully argue his point and explain the contents of the exhibits to the circuit court, so there was no prejudice from the

circuit court's not receiving the exhibits into evidence. We also hold that Quackenbush did not waive his objection to the two continuances discussed above because he had no opportunity to object.

## II. *Speedy Trial*

Quackenbush asserts that the circuit court erred in denying his motion to dismiss all charges due to lack of a speedy trial and addresses six time periods that he claims should not have been excluded from the speedy-trial calculation.

## A. 27 February 2020 to 3 April 2020

The twelve-month period for bringing Quackenbush to trial began to run on 27 February 2020, the date of his arrest. The circuit court conducted a probable-cause hearing the next day and ordered Quackenbush to appear before the circuit court on 3 April 2020.

On 17 March 2020, the Arkansas Supreme Court issued a per curiam that suspended all in-person proceedings in all appellate, circuit, and district courts from 18 March 2020 through 3 April 2020, subject to certain exceptions and to adjustments made as warranted by the circumstances. *In re Response to the COVID-19 Pandemic*, 2020 Ark. 116 (per curiam). The exceptions included proceedings necessary to protect the constitutional rights of criminal defendants, and the per curiam stated that judges are responsible for ensuring that core constitutional functions and rights are protected. *Id.* The per curiam also dictated that "[f]or criminal trials, in light of the public health emergency, any delay for speedy-trial purposes during this time shall be deemed to presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h)." *Id.* at 1.

6

In response to Quackenbush's motion to dismiss, the State agreed that time began to run on February 27 but posited that time was excluded beginning on March 17, the date of the supreme court's per curiam. The circuit court agreed with the State's reasoning. On appeal, Quackenbush argues that none of the exclusions found in Rule 28.3 apply to the period of February 27 to April 3, including the good-cause exclusion found in Ark. R. Crim. P. 28.3(h). He asserts that the supreme court's March 17 per curiam does not affect this time period, as no further action was contemplated by the circuit court in this case until April 3. The delay from his arrest date to the scheduled court appearance on April 3 had nothing to do with the pandemic but was instead a normal part of the timeline in criminal trials. Thus, the time period should not be excluded for speedy-trial purposes.

The State's response on appeal is divided into different time periods than those advocated by Quackenbush, making it burdensome to line up the State's responses to Quackenbush's arguments. But it appears that the State is making the same argument that it did below, which is that for the period of 17 March 2020 to 3 April 2020, the State was barred from holding jury trials via the supreme court's per curiam, so that time should be excluded.

We hold that this entire time period should not be excluded. The supreme court's March 17 per curiam did not instantly convert time from not excluded to excluded on that date; the per curiam's directive could not have any effect in this case until the next scheduled court date, which was April 3.

## B.  3 April 2020 to 25 June 2020

On 3 April 2020, Quackenbush entered a not-guilty plea, and the circuit court set a preliminary hearing for June 5 and a trial date for June 25–26.  Also on April 3, the Arkansas Supreme Court announced additional measures to combat the spread of COVID-19.  *In re Response to the COVID-19 Pandemic*, 2020 Ark. 132 (per curiam).  The order extended the previous suspension of all in-person proceedings in all appellate, circuit, and district courts through Friday, 1 May 2020, and again allowed in-person hearings for the excepted proceedings listed in the March 17 per curiam, but it encouraged judges to utilize all available technologies—including teleconferencing and video conferencing—to further limit in-person courtroom appearances.  The supreme court held that "[a]ll proceedings that do not require in-person appearances of parties or counsel are not suspended and may continue or be suspended at the discretion of the presiding judge as circumstances allow."  *Id*. at 2.  It also reiterated that for criminal cases, "any delay for speedy-trial purposes during this emergency shall be deemed to be extraordinary circumstances that shall presumptively constitute good cause as an excluded period for the period of delay under Arkansas Rule of Criminal Procedure 28.3(h)."  *Id*.

On May 8, the supreme court announced that beginning May 18, Arkansas courts would resume conducting hearings, either by video conference, audio conference, or in-person proceedings, at the discretion of the presiding judge.  *In re Response to the COVID-19 Pandemic*, 2020 Ark. 187 (per curiam).

On June 5, the day set for a preliminary hearing, the circuit court entered a continuance order rescheduling the preliminary hearing for 7 August 2020 and the jury trial

8

for August 13–14. The order specified that "the matter is continued from the 25th & 26th days of June, 2020" and that "said time frame [is] excluded for purposes of speedy trial under Rule 28.3(h) for good cause due to COVID-19 pandemic."

On June 11, the Arkansas Supreme Court lifted the suspension of in-person proceedings beginning July 1 but did not mandate the resumption of in-person proceedings. *In re Response to COVID-19 Pandemic*, 2020 Ark. 249 (per curiam). Instead, individual judges had discretion to decide the appropriateness of in-person proceedings based on the growth rate of the virus in the area, the size of the venue in which court is conducted, the security measures necessary to conduct trials, the availability of personal protective equipment, and other relevant factors. *Id.* The court reiterated that any delay for speedy-trial purposes due to precautions against the COVID-19 pandemic shall presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h). *Id.*

Quackenbush asserts that by the plain language of the circuit court's June 5 continuance order, it intended to exclude only the time frame from the original June 25 trial setting to the new August 13 trial setting and did not exclude the time from the actual date of the order (June 5-24). Further, he argues, there is no reason to exclude that time, as the first trial setting was not an unreasonable amount of time to give the parties an opportunity to prepare for trial. This delay was not attributable to the defendant, was not related in any way to the pandemic, and should not be excluded from speedy-trial computation.

In response to the contention that this time should be excluded as good cause under Rule 28.3(h) as provided by the per curiam orders of March 17 and April 3, Quackenbush

argues that the presumption of good cause provided in the per curiam orders can only be applied to delays that occur either specifically out of COVID-19 concerns or that would not have occurred but for the supreme court's suspension of jury trials. To apply the presumption to all delays, he contests, would abridge a person's right to a speedy trial and abdicate the court's responsibility to protect the constitutional rights of the defendant.

The State responds that because the per curiams barred jury trials from 17 March 2020 to 30 June 2020, and that time period encompasses the time period in question, the time should be excluded for good cause.

We hold that this time should not be excluded. The circuit court's June 5 continuance order clearly states that the "matter is continued from the 25th and 26th days of June, 2020." Thus, the continuance does not begin until June 25, and the time before that date, specifically 3 April 2020 to 25 June 2020, is not excluded.

### C. 16 December 2020 to 13 January 2021

On 21 July 2020, Quackenbush petitioned for a criminal-responsibility examination. Accordingly, the circuit court entered an order of continuance on July 23 and found that by the defense's request, the proceedings would be suspended from July 21 to a date yet to be determined, with that time frame excluded for purposes of speedy trial. While the forensic examination was pending, the Arkansas Supreme Court issued another per curiam on 20 November 2020, which reinstated the suspension of jury trials until 15 January 2021. *In re Response to COVID-19 Pandemic*, 2020 Ark. 384 (per curiam). The completed forensic evaluation was filed with the circuit court on 16 December 2020. The circuit court convened a pretrial hearing on 8 January 2021, and on January 13, it entered an order setting

10

a pretrial conference for 26 February 2021 and finding that speedy-trial time was tolled from 29 July 2020 to 26 February 2021.

Quackenbush concedes that the time between when a motion for criminal-responsibility examination is filed and when the report is filed is excludable for speedy-trial computation. *See* Ark. R. Crim. P. 28.3(a). However, the time from when the report was filed and the order setting a pretrial conference date was entered, 16 December 2020 to 13 January 2021, is not excludable for good cause. He explains that the delay between the report and the order was not the result of, or in response to, the pandemic and would have occurred regardless of whether the jury-trial suspension was in place.

The State raises two arguments in support of excluding this time period. First, it argues that because Quackenbush did not object to the circuit court's 13 January 2021 order, which excluded 29 July 2020 to 26 February 2021 for speedy-trial purposes, he has now waived any objection. Second, the State contends that it was barred from holding jury trials during this time period via the supreme court's per curiams, so the time should be excluded for good cause.

Quackenbush replies that he had no opportunity to object to the January 13 circuit court order because there was no indication at the January 8 hearing that the court would be tolling the speedy-trial time from 29 July 2020 to 26 February 2021. He also again argues that just because time passes during a period that jury trials are suspended does not mean that the time is excluded for good cause related to COVID-19 concerns.

We hold that this time period should not be excluded. Quackenbush did not have the opportunity to object to the exclusion imposed by the court, and the time period

between 16 December 2020 and 13 January 2021 is not attributable to the defendant, nor was it affected by COVID-19 concerns. The circuit court's exclusion of 29 July 2020 to 26 February 2021 was simply too broad.

### D. 12 February 2021 to 24 February 2021

On 13 January 2021, Quackenbush moved for the circuit judge, Judge James Dunham, to recuse himself based on his professional relationship with Jeff Faught, who represented Heath Melton (the victim) in his divorce from Quackenbush's daughter. Judge Dunham entered a recusal order on February 24, and the case was reassigned to Judge Dennis Sutterfield on March 31.

Arkansas Rule of Criminal Procedure 28.3(a) states, "No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period." Therefore, Quackenbush asserts, the time in excess of thirty days from the filing of his motion to the entry of the recusal order should not be excluded. He notes that the delay was not related to the pandemic or public-health safety concerns, so the presumptive good cause should not apply.

In response, the State argues the same points that it did against the previous contested time period—that Quackenbush did not timely object to the circuit court's 13 January 2021 order and therefore waived his objection and that jury trials were suspended during this time period so the time should be excluded for good cause. Quackenbush likewise replies as before that he had no opportunity to object to the January 13 circuit court order and that the time delay had nothing to do with COVID-19 concerns.

12

We hold that this time period should not be excluded. Again, Quackenbush did not have the opportunity to object to the exclusion imposed by the court, and the time period between 12 February 2021 and 24 February 2021 is not attributable to the defendant, nor was it affected by COVID-19 concerns.

E. 5 May 2021 to 1 September 2021

After the case was reassigned, the circuit court entered an order on 5 April 2021 that set a pretrial hearing for 5 May 2021. On 8 April 2021, the Arkansas Supreme Court announced an end to the suspension of jury trials effective 1 May 2021. *In re Response to COVID-19 Pandemic—Resumption of Jury Trials*, 2021 Ark. 72, 619 S.W.3d 397 (per curiam). The order dictated that all state courts shall continue to follow the Arkansas Department of Health's guidelines concerning face coverings and social distancing, and courts were encouraged to implement additional measures as necessary to protect the health of trial participants and attendees. The order stated that it should be "interpreted broadly for the protection of the public, including the employees of the Arkansas judicial branch, from the risks associated with COVID-19." *Id.* at 2, 619 S.W.3d at 397. The order also reiterated once again that for criminal trials, any delay for speedy-trial purposes due to precautions against the COVID-19 pandemic shall presumptively constitute good cause under Ark. R. Crim. P. 28.3(h) and shall constitute an excluded period for speedy-trial purposes.

After the pretrial hearing on May 5, the circuit court entered an order setting a jury trial to begin on 1 September 2021. Quackenbush contends that during this time period,

13

there was no jury-trial suspension in place nor do any other exclusions listed in Rule 28.3 apply. Therefore, this time period should not be excluded from speedy-trial computation.

The State makes no argument on this point and agreed below that this time period was attributable to the State. Thus, we hold that this time period is not excluded from the speedy-trial computation.

F.  1 September 2021 to 15 March 2022

On 25 August 2021, the circuit court continued the jury trial, which was set to begin September 1, to 19 January 2022. In that order, the court "waived" speedy trial from 1 September 2021 to 21 January 2022 and cited the following reasons:

1.     The length of the trial being three days;

2.     The dramatic spread of the corona virus and [its] variants in recent weeks;

3.     The high level of infections in Johnson County;

4.     The responsibility we owe to the community to avoid the unnecessary risk of spreading this virus when hospital staffs and resources are being stretched to dangerous levels;

5.     An expected surge in corona virus cases caused by the return to school and absence of a uniform strategy to combat its accelerated spread statewide[;]

6.     Witnesses coming in from different parts of Arkansas;

7.     The Governor of Arkansas having declared a state of emergency based upon the emergence of the corona virus and its variants and the threat it poses to the health, safety[,] and welfare of the citizens of the State of Arkansas.

On 12 January 2022, the circuit court continued the jury trial to April 12, citing "the dramatic spread of the corona virus and [its] variants in recent weeks." The court "waived"

14

speedy trial from 19 January 2022 to 14 April 2022.[1]  Quackenbush moved for dismissal due to lack of a speedy trial on 16 March 2022, which tolled the running of the time for a speedy trial under our rules.  *See Barefield v. State*, 2021 Ark. App. 151 (the filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules).

Quackenbush argues that no good cause existed for either the August 2021 or January 2022 continuance or in the alternative, that he sufficiently rebutted the presumption of good cause granted by the supreme court in its per curiams.  In both his reply to the State's response to his motion to dismiss and at the hearing on his motion to dismiss, Quackenbush questioned whether the court had considered the larger size of the Johnson County courtroom, which could accommodate necessary social distancing, as well as other possible safety accommodations that would allow a jury trial to occur.  He also asserted that jury trials were taking place in other courtrooms within the same circuit during the time the continuances had been ordered.  Quackenbush argues that the State did not respond to these concerns but instead relied solely on its claim that the good-cause presumption was sufficient to exclude these delays from speedy-trial computation.

In addressing whether the good-cause presumption applies, Quackenbush contrasts the supreme court's June 2020 per curiam lifting the suspension on jury trials with the April 2021 per curiam lifting the suspension a second time.  The June 2020 per curiam did not mandate that jury trials begin and left that decision to the discretion of individual judges.

---

[1]The January 2022 order states that it is entered "upon the agreement of the parties," but Quackenbush explains that he only agreed to the new court date in the order, not to the continuance itself.  The State does not dispute this statement.

The April 2021 per curiam, on the other hand, did not include the discretionary language for judges. Quackenbush argues that the difference between the two per curiams is significant and that in the April 2021 per curiam, the supreme court clearly intended for courts to resume jury trials effective May 1, 2020, to follow the guidelines of health officials, and to consider additional measures to attempt to accommodate the courtroom participants.

Quackenbush acknowledges that the April 2021 per curiam still included the provision that "any delay for speedy-trial purposes due to precautions against the COVID-19 pandemic shall presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h)," 2021 Ark. 72, at 2, 619 S.W.3d at 397, but he notes that the order also ended the jury-trial suspension starting 1 May 2020. Quackenbush argues that by doing so, the supreme court intended that the presumption of good cause would still apply until May 1 but after that date would not apply, and consequently the State or the court should have been required to show good cause to continue any further trials by demonstrating that the risk is significant and that no reasonable accommodations could be made. The burden would then shift to the defendant to provide evidence that the risks are not present or could have been sufficiently mitigated or that the concerns do not justify delaying a jury trial and tolling speedy-trial time. Quackenbush insists that to leave the presumption in place indefinitely, without requiring the courts to demonstrate that no reasonable accommodations could be implemented to conduct a safe jury trial, would unfairly place the burden on the defendant to prove that the court failed to consider all other options in delays where the risks associated with COVID-19 are implicated.

16

The State contends that nothing in the language of the April 2021 per curiam limited a circuit court's ability to continue a trial due to COVID-19 after 1 May 2021, and the per curiam specifically noted that it was "to be interpreted broadly for the protection of the public, including the employees of the Arkansas judicial branch, from the risks associated with COVID-19." *Id*. at 2, 619 S.W.3d at 397. The State argues that broadly interpreting the per curiam means that the circuit court had the discretion to exercise caution and continue a trial for good cause in the event of rising COVID-19 cases.

In reply, Quackenbush insists that the State's argument ignores the directive in the April 2021 per curiam that "all Arkansas state courts shall continue to follow the Arkansas Department of Health's guidelines concerning face coverings and social distancing" and its encouragement to "implement additional measures as necessary." *Id*. at 1–2, 619 S.W.3d at 397. He contends that the State's position also ignores the circuit court's responsibility to protect a defendant's right to speedy trial and does not address whether the good-cause presumption should apply without consideration of the defendant's right to a speedy trial.

At the hearing on the motion to dismiss, the circuit court remarked, "I took into consideration all the Supreme Court's rulings on these issues and exercised my discretion for good cause to continue the case based on the facts on the ground at the time, which we were in a very precarious situation concerning resurgence of this virus, unfortunately." However, Quackenbush would have this court hold that the April 2021 per curiam "did not grant that judges had discretion whether to conduct jury trials." In other words, the circuit court did not have the authority to continue the case sua sponte due to COVID-19 concerns without an affirmative showing of good cause because the good-cause presumption

17

no longer applied. Likewise, in service of its responsibility to bring a defendant to trial in a timely manner, the State could not rely on the good-cause presumption and should have objected to the continuances or at least questioned the necessity of the continuances.

We hold that Quackenbush has misinterpreted the April 2021 per curiam. While the opinion did lift the suspension of jury trials, it did not foreclose the possibility or necessity of delays in criminal trials due to precautions against the pandemic. To that end, the supreme court reiterated that "any delay for speedy-trial purposes due to precautions against the COVID-19 pandemic shall presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h) and shall constitute an excluded period for speedy-trial purposes." *Id.* at 2, 619 S.W.3d at 397. The circuit court granted the two continuances at issue during this time period due to the spread of COVID-19, variants of the virus, and a high number of infections in Johnson County. We hold that these delays constitute good cause and that this time period was properly excluded from the speedy-trial computation.

The total of all time not excluded from the speedy-trial computation is 278 days. Because Quackenbush was brought to trial within 365 days, we affirm the denial of his motion to dismiss on speedy-trial grounds.

Affirmed.

VIRDEN, J., agrees.

THYER, J., concurs.

**CINDY GRACE THYER, Judge, concurring**. While I agree with the majority's conclusion in this matter, I write separately because we differ in the application of the

Arkansas Supreme Court's COVID-19 per curiam orders to the facts of this case and to highlight a point not addressed by the majority.

I. *Facts and Procedural History*

I take no specific issue with the facts as set forth in the majority opinion, but I recite the relevant ones here to give context to the per curiam orders and where they fall in the timeline of the facts of this case.

On February 27, 2020, an arrest warrant was issued for Eugene Quackenbush. Quackenbush was arrested pursuant to that warrant and brought before the circuit court on February 28, 2020, for his first appearance. At the first appearance, the circuit court found probable cause and arraigned Quackenbush on the charges of kidnapping and aggravated assault pursuant to Rules 8 and 9 of the Arkansas Rules of Criminal Procedure. Counsel was appointed, and bond was set. Critical to the issues here, Quackenbush was ordered to appear in the Johnson County Circuit Court on April 3, 2020.

Just as Quackenbush's case was starting its progression through the circuit court, Governor Hutchinson declared a public-health emergency due to the spread of COVID-19. Within days, COVID-19 was classified as a pandemic, and a national emergency was declared. In an effort to protect the public and employees of the Arkansas judiciary from the spread of the virus, on March 17, 2020, the Arkansas Supreme Court issued the first of several per curiam orders related to the pandemic. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 116. Specific to the issues here, the supreme court in this March 17 order suspended all in-person judicial proceedings except proceedings in which speedy trial might be implicated. *Id*. at 1–2. In this same per curiam, however, the supreme court also

stated, "For criminal trials, in light of the public health emergency, any delay for speedy trial purposes during this time shall be deemed to *presumptively constitute good cause* under Arkansas Rule of Civil Procedure 28.3(h)." *Id.* at 2–3 (emphasis added).

Less than a month later, on April 3, 2020, the supreme court issued its second per curiam order related to COVID-19. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 132. This second per curiam provided:

> For criminal cases, in light of the public-health emergency, any delay for speedy trial purposes during this emergency shall be deemed to be extraordinary circumstances that shall *presumptively constitute good cause* as an excluded period for the period of delay under Arkansas Rule of Criminal Procedure 28.3(h).

*Id.* at 2 (emphasis added).

This "presumptive" stopping of the clock for speedy trial purposes, which began with the March 17, 2020 per curiam, continued uninterrupted until June 11, 2020. On that date, the supreme court issued a third per curiam order that lifted the jury-trial suspension effective July 1, 2020. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 249.

On November 20, 2020, the court issued another per curiam that, again, suspended jury trials and, again, contained the "presumptively constitute good cause" language from its prior orders. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 384. In the November per curiam, the supreme court also stated that "[c]riminal matters, such as initial appearances, detention hearings, arraignments, omnibus hearings, suppression hearings, plea hearings and sentencing hearings shall continue to take place either by videoconference or in person, as scheduled by the presiding judge." *Id.* at 2. It is notable that the supreme court's list of exclusions on November 20, 2020, is similar to its list on March 17, 2020, but speedy

20

trial is specifically omitted from the latter and included in the former. *Compare In re Response to the COVID-19 Pandemic*, 2020 Ark. 116 (speedy trial included) *with In re Response to the COVID-19 Pandemic*, 2020 Ark. 384 (speedy trial excluded).

The suspension of jury trials and the "presumptively constitute good cause" language continued uninterrupted in various per curiam orders until April 8, 2021. On April 8, the supreme court again lifted the suspension on jury trials effective May 1, 2021. *See In re Response to the COVID-19 Pandemic*, 2021 Ark. 72, at 2. Yet, without explanation, it retained the "presumptively constitute good cause" language in this order. *Id*. It is this per curiam that continues to control Arkansas circuit courts today.

Getting back to the specific facts of this case, on March 30, 2020, the State filed its information below, formally charging Eugene Quackenbush with kidnapping, terroristic threatening, and attempted murder. As previously ordered, Quackenbush appeared in the Johnson County Circuit Court on April 3, 2020. On this day the court ordered Quackenbush to return to the circuit court for a preliminary hearing on June 5, 2020, and for a jury trial on June 25–26, 2020. Critically, there is no mention of either the March 17 or the April 3 per curiam order in the circuit court's order.

On June 5, 2020, Quackenbush again appeared before the circuit court, and the case was continued to August 7, 2020, for the preliminary hearing and August 13–14, 2020, for a jury trial. The circuit court, in its written order, specifically excluded this time for good cause pursuant to Rule 28.3(h) of the Arkansas Rules of Criminal Procedure due to the COVID-19 pandemic.

On July 21, 2020, Quackenbush filed a petition for a criminal responsibility examination (CRE) pursuant to Arkansas Code Annotated section 5-2-305. Two days later—July 23—the circuit court granted another continuance in this matter, on defense motion, based on the July 21, 2020 CRE petition. The circuit court entered a formal order granting Quackenbush's request for a CRE on July 29, 2020. On December 16, 2020, the Arkansas Department of Human Services filed its CRE report.

In an order dated January 8, 2021, and filed January 13, the case was continued until February 26, 2021. This continuance order specially provided that "[s]peedy trial is tolled from July 29, 2020 to February 26, 2021," but it did not recite a basis for the circuit court's decision to toll speedy trial. This order did, however, notify the parties of a potential conflict of interest involving the originally assigned circuit judge, Judge James Dunham. In response, on January 13, 2021, Quackenbush filed a formal motion seeking Judge Dunham's recusal based on the disclosed potential conflict. By order filed February 24, 2021, Judge Dunham recused. The case was randomly reassigned to Judge Gordon W. "Mack" McCain, Jr., who also recused. It was then assigned to Judge Dennis Sutterfield by order filed March 31, 2021.

On May 10, 2021, while the parties were negotiating Quackenbush's pretrial release, the court scheduled this case for a three-day jury trial commencing on September 1, 2021. However, on August 25, 2021, the court again continued the case until January 21, 2022. In its August 25 continuance order, the court noted, among other things, the dramatic spread of COVID-19, the high rate of infections in Johnson County, the anticipated surge

in infections related to the reopening of schools, and the governor's declared state of emergency as reasons to toll speedy trial during this time.

In an order filed January 12, 2022, the case was again continued to April 12–14, 2022. This order specifically noted "the dramatic spread of corona virus and it's [sic] variants in recent weeks with speedy trial is [sic] waived from January 19, 2022 to April 14, 2022."

On March 16, 2022, Quackenbush filed a motion to dismiss the case based on the State's alleged violation of his right to a speedy trial. The State responded on March 29, denying that Quackenbush's rights had been violated. A hearing was held on the speedy-trial motion on April 5, 2022. Two days later, on April 7, the court denied Quackenbush's motion and adopted the findings of fact and conclusions of law contained in the State's response to the speedy-trial motion.

Following a jury trial, Quackenbush was convicted of first-degree murder, kidnapping, and terroristic threatening. Together with his sentencing enhancement, he received a cumulative sentence of 156 months' incarceration in the Arkansas Department of Correction together with a fine and court costs.

II. *Discussion of Authority and Application of Law to Facts*

Ultimately in this case, we are tasked with applying the supreme court's per curiam orders related to COVID-19. While I agree with the majority's conclusion that the State has met its burden of proof and that Quackenbush's right to speedy trial has not been violated, I disagree with the majority's interpretation of the supreme court's COVID-19 per curiam orders as they apply to the facts of this particular case.

Criminal defendants in Arkansas are specifically guaranteed the right to a speedy trial by the Arkansas Constitution. *See* Ark. Const. art. 2, § 10. The implementation of this constitutional directive is currently embodied in Rule 28 of the Arkansas Rules of Criminal Procedure. Rule 28.1 requires a defendant be brought to trial within twelve months of the time provided in Rule 28.2. Ark. R. Crim. P. 28.1. This twelve-month clock starts on the date of arrest or service of summons. Ark. R. Crim. P. 28.2(a). From this starting point, the clock continues running uninterrupted except for "excluded periods" as set forth in Rule 28.3. Ark. R Crim. P. 28.1.

Rule 28.3 contains eight "excludable periods" that stop the speedy-trial clock. Two of those periods are implicated here. First, Rule 28.3(a) stops the clock during those times that pretrial motions are pending ruling before the court. Ark. R. Crim. P. 28.3(a). However, the rule goes on to limit that time to thirty days following a hearing on the pretrial motion when the court takes the motion under advisement. *Id*. Second, Rule 28.3(h) stops the clock during "[o]ther periods of delay for good cause." Ark. R. Crim. P. 28.3(h). If the defendant is not brought to trial in a timely manner, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1; *State v. Crawford*, 373 Ark. 95, 281 S.W.3d 736 (2008).

As set forth in the majority opinion, when a defendant makes a prima facie showing of a speedy-trial violation, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified pursuant to Rule 28.3. *Crawford*, *supra*. A prima facie case is made when the period of delay exceeds twelve months from the date of arrest or service of summons. *Id*. On appeal, this court conducts a de novo review to

determine whether specific periods of time are excludable under speedy-trial rules. *Id.* Quackenbush's speedy-trial motion claimed 756 days between the date of arrest and the filing of the motion. At that point, it became the State's burden to show the delay resulted from Quackenbush's conduct or was otherwise justified. *Crawford*, *supra*.

Here is the point of departure between my reading of the COVID-19 per curiam orders and the majority's reading of them. As set forth above, on March 17, 2020, the supreme court issued the first of its per curiam orders related to COVID-19. This order suspended all in-person judicial proceedings subject to certain enumerated exceptions—including proceedings implicating speedy trial. The court went on to state, "For criminal trials, in light of the public health emergency, any delay for speedy trial purposes during this time shall be deemed to *presumptively constitute good cause* under Arkansas Rule of Criminal Procedure 28.3(h)." *In re Response to the COVID-19 Pandemic*, 2020 Ark. 116, at 2–3 (emphasis added). On April 3, 2020, the supreme court issued its second per curiam order related to COVID-19. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 132. This second per curiam continued the suspension of in-person judicial proceedings and adopted the same exceptions listed in the March 17, 2020 per curiam. *Id.* Critical to the issues here, the court stated:

> For criminal cases, in light of the public-health emergency, any delay for speedy trial purposes during this emergency shall be deemed to be extraordinary circumstances that shall *presumptively constitute good cause* as an excluded period for the period of delay under Arkansas Rule of Criminal Procedure 28.3(h).

*Id.* at 2 (emphasis added).

25

Thus, while the supreme court slightly modified its language from the March 17, 2020 per curiam, it specifically included the "presumptively constitute good cause" language from its prior order. Throughout the pandemic, the supreme court has, by per curiam, sometimes allowed for in-person judicial proceedings and sometimes prohibited them based on exposure rates within Arkansas. The common element of each per curiam germane to the issues here, however, is that the court has been consistent in including the "presumptively constitute good cause" language within the individual per curiam orders. To me, this consistency is intentional and is the key to understanding why the supreme court would prohibit jury trials during the pandemic on the one hand, while on the other, simultaneously excepting from the prohibition those cases in which speedy trial may be an issue.

Presumptions in criminal cases in Arkansas are governed by Rule 303 of the Arkansas Rule of Evidence. Specifically, Rule 303(b) provides:

> The court is not authorized to direct the jury to find a presumed fact against the accused. If a presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, but only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. If the presumed fact has a lesser effect, the question of its existence may be submitted to the jury provided the basic facts are supported by substantial evidence or are otherwise established, unless the court determines that a reasonable juror on the evidence as a whole could not find the existence of the presumed fact.

Ark. R. Evid. 303(b).

In other words, presumptions in the criminal context shift the burden of going forward. That is, once a presumption is implicated, the trier of fact can assume the validity of that presumption and can rely upon it until contrary proof is provided that (a) negates

26

the presumption entirely and shifts the burden back to the one who originally had it or (b) casts doubt upon its reliability at which point the trier of fact must simply consider the presumption along with other available proof to ascertain the true version of events, giving no particular weight to the underlying presumption.

The effect, then, of the supreme court's COVID-19 per curiam orders is that beginning March 17, 2020, the burden of going forward shifted back to Quackenbush to present proof or argument that (a) negated the presumption that good cause existed to stop the speedy-trial clock or (b) cast sufficient doubt on the presumption that good cause existed such that the presumption itself was but a single additional factor to be considered by the trier of fact—here, the circuit court. Because I interpret the COVID-19 per curiam orders in this way and because this court has de novo review, *Williams v. State*, 2023 Ark. App. 30 (court conducts a de novo review to determine whether specific periods of time are excludable under speedy-trial rule), it is necessary to consider Quackenbush's proof and argument as presented to the circuit court.[1]

### A. February 27 to April 3, 2020

I wholeheartedly agree that the time between February 27 and March 17, 2020, is not an excluded period for speedy-trial purposes. For a different reason, I also agree that the time between March 17 and April 3, 2020 is not an excluded period for speedy-trial purposes.

---

[1]While I disagree with Quackenbush's lumping of the particular time periods as they apply to the COVID-19 per curiam orders, I, like the majority, will use Quackenbush's time frames because I believe the presumption of excludability granted in the COVID-19 per curiam orders shifted the burden of going forward to him.

Quackenbush argues that the time between March 17 and April 3, 2020, should not be an excluded period because it was due to the ordinary timeline of a criminal case as evidenced by the circuit court's original scheduling order and the fact that the State had not yet provided discovery to him. In effect, Quackenbush argues that the March 17 per curiam was immaterial because no further action was contemplated by the circuit court until April 3. The State, on the other hand, argues that the March 17 per curiam effectively halted jury trials in Arkansas, and it was entitled to rely on the presumption of excludability from that date forward. The circuit court rejected Quackenbush's argument and found that the time period between March 17 and April 3, 2020, was excluded on the sole basis of the per curiam.

In reversing the circuit court on this time period, the majority states: "We hold that this entire time period should not be excluded. The supreme court's March 17 per curiam did not instantly convert time from not excluded to excluded on that date . . . . " I disagree with Quackenbush's argument, the State's argument, and the majority's reasoning. While I agree with Quackenbush's argument and the majority's statement in a vacuum, I write separately to note that both are overly broad and misinterpret what I believe to be the true meaning of the COVID-19 per curiam orders. It is true that the March 17 per curiam did not instantly convert that time period to an excludable one. What the per curiam did was simply to create a presumption that the applicable time period was an excludable period that stopped the speedy-trial clock, and then it shifted the burden of going forward to criminal defendants.

Ultimately, I agree with the majority's holding that this time should not have been an excluded period. Here, the record is clear that the circuit court did not contemplate further action in this case until April 3, as evidenced by the February 27, 2020 order and as argued by Quackenbush. Moreover, the State had not, during this time, provided Quackenbush with any discovery. This proof was likely sufficient to negate the presumption altogether, and it was certainly sufficient to cast doubt on its validity such that the burden shifted back to the State. The State's sole argument on this time frame was the presumption itself. That alone is insufficient, as a matter of law, to meet the burden of proof the State reacquired when Quackenbush negated or cast sufficient doubt on the object of the presumption. I too, therefore, would hold that the time period between March 17 and April 3, 2020 was not an excluded period for purposes of speedy trial.

## B.  April 3 to June 25, 2020

On April 3, 2020, Quackenbush appeared before the circuit court and pled not guilty to the information. The court then set the matter for a preliminary hearing on June 5, 2020, and a two-day jury trial beginning July 25, 2020.  Both Quackenbush and the State make the same arguments relative to this time period as each did for the March 17 to April 3, 2020 time period addressed above.  The only new proof presented here by Quackenbush is his assignment of meaning to the circuit court's failure in its June 5, 2020 continuance order to specifically exclude this period pursuant to the supreme court's per curiam orders. I agree with Quackenbush and the majority that this order is meaningful and provides additional proof that the presumption had either been negated or that sufficient doubt had been cast upon it such that the burden shifted back to the State.  For the same reasons noted above,

29

I, too, would hold that this entire time period should not be deemed an excluded period for purposes of speedy trial.

## C. December 16, 2020, to January 13, 2021

On July 21, 2020, Quackenbush filed his motion seeking a CRE pursuant to Arkansas Code Annotated section 5-2-305. On December 16, 2020, the Arkansas Department of Human Services filed the CRE report with the court. The circuit court did not, however, have another hearing in this matter until January 13, 2021.

On appeal, Quackenbush argues—as he does for previous time periods—that the time following the filing of the CRE report and the circuit court's next hearing—January 13, 2021—is not an excludable period because it was based, in essence, on the ordinary timeline in a criminal case.[2] On appeal, Quackenbush also adds that he was not given the opportunity to make a contemporaneous objection related to the excludability of this time period. I disagree with both propositions.

---

[2]Absent the supreme court's COVID-19 per curiam orders, the majority and both parties reflexively restart the speedy-trial clock on the filing of the CRE report by the Arkansas Department of Human Services, and I certainly understand why. I acknowledge cases such as *Galvin v. State*, 2021 Ark. App. 121, 618 S.W.3d 475, stand for the proposition that the filing of the exam is the proper restart point for purposes of the speedy-trial clock. I note here, however, that I disagree with *Galvin* and similar cases that stand for this proposition on the basis of the plain language of Rule 28.3(a). There is nothing in Rule 28.3(a) indicating that the mere filing of the CRE report restarts the speedy-trial clock. In fact, the rule itself contemplates a hearing on the CRE report, which, by necessity, would mean the date the CRE report is filed is merely the starting point for the discussion of the reasonableness of the period of delay that resulted from the original motion. As that issue was not raised by either party and is not material to my decision, it does not change my analysis above.

30

In my opinion, neither Quackenbush nor the majority accurately apply the presumption of excludability. The "ordinary timeline in a criminal case" here is qualitatively different. By this point in the case, it had been ten months since Quackenbush's arrest, and the State had provided discovery necessary to conduct the trial. Finally, the circuit court had already continued the case from two prior jury-trial settings based, at least in part, to COVID-19 and the supreme court's per curiam orders. In non–COVID-19 times, the "ordinary timeline in a criminal case" might well have meant that Quackenbush would have been tried by the jury on or soon after December 16, 2020. But this case was not being prosecuted in non–COVID-19 times.

In both per curiam orders applicable to this time period—the November 20, 2020, and January 5, 2021 per curiam orders—jury trials were prohibited, and the "presumptively constitute good cause" language applied to speedy trial. Absent additional proof, I would hold that Quackenbush failed to meet his burden of going forward and that the State justifiably relied on the presumptive stopping of the speedy-trial clock. Therefore, I would hold that the time between December 16, 2020, and January 13, 2021, was a properly excluded period for purposes of Rule 28.3(h).

As to Quackenbush's argument that he did not have the opportunity to make a contemporaneous objection to the tolling of speedy trial, I believe that assertion misses the point for two reasons.

First, throughout his brief and below, Quackenbush reminds both the circuit court and this court that "[a] defendant is not required to bring himself to trial or 'bang on the courthouse door' to preserve his right to a speedy trial; the burden is on the courts and the

prosecutors to see that trials are held in a timely fashion." *Badger v. State*, 2019 Ark. App. 490, at 8, 588 S.W.3d 779, at 785 (internal citations omitted). That is because—absent the supreme court's "presumptively constitute good cause" language in each of its per curiam orders—the burden is on the State rather than the defendant. A defendant's sole burden is to make a prima facie showing that the twelve-month clock in Rule 28.1 has been exceeded. The majority recognizes this truth in Section I of its opinion when it disregards the State's argument with a simple citation to *Robertson v. State*, 2019 Ark. App. 73, 568 S.W.3d 323.

Here, the question is not whether a contemporaneous objection to the tolling of time for speedy-trial purposes was required or made; rather, it depends on the strength of the argument and proof presented on the motion to dismiss. In other words, did Quackenbush present sufficient proof or argument *on the motion* to overcome the presumption of excludability that arose with the supreme court's per curiam orders. I believe the requirement or timing of an objection on the tolling issue is immaterial to the question here.

Moreover, I think it is disingenuous to suggest that because Quackenbush was not given the opportunity to make a contemporaneous objection to the order tolling time below, the State could not rely on the presumption. Here, Quackenbush was given a full and robust opportunity at the motion-to-dismiss hearing to present proof and argument that might negate or cast doubt on the presumption. Yet, Quackenbush chose to stand on an "ordinary timeline in a criminal case" assertion as his sole argument for the nonexcludability of this time frame. More specifically, he claimed that the time period between the filing of the CRE report and the hearing on January 8 was in the "usual course of the court" and

would have occurred regardless of whether the courts were allowed to conduct jury trials. This is insufficient to negate the presumption, as by this time in this case, the "ordinary timeline in a criminal case" or the "usual course of the court" was qualitatively different than the earlier time periods as set forth above.

I would, therefore, hold that these twenty-nine days should be excluded from the speedy-trial calculation on the bases of the per curiam orders in place and Rule 28.3(h).

D.  February 12 to February 24, 2021

On January 13, 2021, Quackenbush filed a motion seeking Judge Dunham's recusal. On February 24, 2021, Judge Dunham recused. Quackenbush argues that the speedy-trial clock restarted thirty days following the filing of his motion pursuant to Rule 28.3(a); therefore, the supreme court's COVID-19 per curiam orders are immaterial. For the same reasons given for nonexcludability of the December 16, 2020, to January 13, 2021 time frame, the majority holds that this time period in not an excludable period. I would exclude this time based on both the "presumptively constitute good cause language" in the relevant per curiam orders and Rule 28.3(h).

I also believe that there is a wholly separate reason that this time period should have been excluded from the one-year limitation. The majority in its opinion focuses on a single sentence of Rule 28.3(a) that I believe to be inapplicable based on the facts presented here. The majority relies on Rule 28.3(a), which specifically provides in relevant part that speedy trial is tolled during "[t]he *period of delay resulting from* other proceedings concerning the defendant, including but not limited to . . . hearings on pretrial motions . . . .  No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of

time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period." Ark. R. Crim. P. 28.3(a) (emphasis added). I believe the majority's focus is misplaced.

The speedy-trial tolling occasioned by Rule 28.3(a) has three requirements. Obviously, the first of those requirements is the "filing" of a motion. Second, there must also be a "period of delay resulting from" the filing. It is only after one considers the filing and period of delay occasioned by the filing that one then considers the thirty-day period during which the motion is "held under advisement."

Here a motion was filed on January 13, 2021, and the majority moves directly to the thirty-day limitation without discussion or consideration of the "period of delay resulting from" the filing, which is likely longer than thirty days. Arkansas Rule of Civil Procedure 6(c) grants a party opposing a filed motion ten days to respond. Ark. R. Civ. P. 6(c). While there is no similar ten-day response time contained in the Arkansas Rules of Criminal Procedure, surely the nonmoving party in a criminal case should be given some time to respond. Even then, the majority does not consider the actual language of the Rule— "period of delay resulting from" the filing of the motion—and the practical realities of an Arkansas criminal practice on attorneys or the trial bench.

First, either party can demand a hearing on the motion, and the circuit court should, in most instances, grant such a hearing unless the hearing would not inform the circuit court's decision. Surely if a hearing were requested, the majority would not, by rote application, restart the speedy-trial clock thirty days after the filing of the motion. To do so would be to render the "period of delay resulting from" the filing of the motion superfluous.

34

In practice, the scheduling of that hearing will, by necessity, almost always exceed the thirty days mentioned in Rule 28.3(a). That is precisely why I believe the majority's focus should be on the "period of delay resulting from" the filing of the motion.

Even when a hearing is not requested, there is nothing in this record to suggest that the recusal motion was ever "held under advisement." It is this "held under advisement" language that is the trigger required to start the thirty-day period relied on by the majority. Since the circuit court here never held the motion under advisement, the thirty-day limitation in Rule 28.3(a) was never implicated.

To be sure, criminal cases often present complex issues that require a circuit court to consider complex fact patterns, complex criminal statutes, and complex rules. There are also the overriding constitutional implications that overlay many, if not most, of the statutes and rules. I believe that is precisely why the focus should be on the "period of delay resulting from" the filing of the motion as opposed to a rote application of a thirty-day requirement. *See Miller v. State*, 100 Ark. App, 391, 269 S.W.3d 400 (2007).

I would, therefore, hold that these twelve days should be excluded from the speedy-trial calculation based on Rule 28.3(h).

### E.  May 5 to September 1, 2021

For the reasons set forth in the majority opinion, I agree that the time period from May 5 to August 25, 2021, is not an excluded period pursuant to Rule 28.3(h). While not argued by either party, I would also note that, despite the filing of at least one motion by Quackenbush during this time frame, it would also not be an excluded period pursuant to Rule 28.3(a) because there was no "period of delay resulting from" the filing of this motion.

35

On August 25, 2021, the circuit court continued the case once again and set the jury trial to begin January 21, 2022. In doing so, the court specifically noted the rise of COVID-19 in the Johnson County area as the basis for granting this continuance. In my opinion, the entry of this continuance order should have been analyzed using the same burden-shifting analysis that I suggested as to the time frames above. At the hearing on the motion to dismiss, however, the State conceded that this was not an excluded period pursuant to Rule 28.3(h). Due to the State's concession, I would also reluctantly agree that the time period from August 25 to September 1, 2021 is not an excluded period for purposes of speedy trial.

## F. September 1, 2021, to March 15, 2022

As to this time frame, I believe the majority gives full credence to the supreme court's COVID-19 per curiam orders, and I wholly agree that this time period is an excluded period for purposes of speedy trial pursuant to Rule 28.3(h).

I also agree with the majority's treatment of the circuit court's exclusion of the nineteen exhibits consisting of sentencing orders, jury instructions, and other orders from cases in Pope and Franklin Counties that had been entered between July 2021 and March 2022 indicating that jury trials were being conducted in other counties within the Fifth Judicial Circuit.[3] I embrace completely the majority's holding that no prejudice could be shown by the exclusion of these exhibits because—whether introduced into evidence or

---

[3]My only quibble is that it is within this time frame that the discussion surrounding the exclusion of the nineteen exhibits should have taken place.

not—the circuit court clearly considered this proof in making its decision as shown on this record.

On the basis of the above and foregoing, I believe there are total of 121 nonexcluded days attributable to speedy trial, well within the 365 days required to bring Quackenbush to trial.

*Samuel F. Eastman*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.