Robert Earl GALVIN *v*. STATE of Arkansas

CR 95-753                                    912 S.W.2d 932

Supreme Court of Arkansas
Opinion delivered January 16, 1996

*Arkansas Public Defender Comm'n*, by: *Richard A. Hutto*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen. and *Robin Carroll*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1) of the Rules Governing Admission to the Arkansas Supreme Court, for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Robert Earl Galvin was convicted of first-degree murder and sentenced to thirty-six years imprisonment. For his sole point on appeal, Galvin contends that the trial court erred in denying his motion for a directed verdict. We affirm.

At appellant's trial an officer with the Little Rock Police Department testified that he received a call at 2:31 a.m. on December 19, 1993, and, after arriving at the intersection of Twenty-fifth and Maple, discovered the body of the victim, Joey Madaris, lying in a grassy area next to a fence near the corner. In addition, an expended cartridge was found in the intersection itself. A crime specialist testified that the expended cartridge was

found approximately forty feet from the victim and that such a cartridge would not have been ejected more than six or seven feet from where the weapon was fired. He further testified that it was impossible to determine whether the cartridge was involved in this incident. An associate medical examiner with the Arkansas State Crime Laboratory testified that the victim had two gunshot wounds. The fatal shot entered the right side of the victim's back, and a second shot entered the sole of the victim's right foot.

Derrick Johnson, age seventeen, testified that he knew the victim, Joey Madaris, and that he saw the victim on the morning of December 19, 1993. Johnson stated that he also saw Robert Galvin, age sixteen, John Holmes, and Derrick Galvin standing in a yard by John Holmes' house which was next to the house with the fence where the victim was found. Derrick Johnson was standing across the street near an elementary school on Maple Street. Johnson testified that it appeared Madaris was exchanging words with the Galvins and Holmes. When Madaris attempted to walk away, Derrick Galvin and Holmes grabbed him, Robert Galvin pulled up his shirt, pulled out a gun, and started shooting. Johnson testified that he heard two shots and started running; the last place he saw Madaris was near the corner of the fence. Johnson stated that he knew appellant Robert Galvin before the incident and identified the appellant in court. Although Johnson could not say that he actually saw Madaris get shot, he testified that he saw Galvin shoot the gun at Madaris from close range and heard two shots before he ran away.

█ The appellant argues that the trial court erred in denying his motions for directed verdict because there was no substantial evidence upon which reasonable jurors could find appellant committed the homicide. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Young* v. *State*, 321 Ark. 541, 906 Ark. 280 (1995). When reviewing the sufficiency of the evidence on appeal, we do not weigh the evidence but simply determine whether the evidence in support of the verdict is substantial. *Id.* Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Id.* In determining whether there is substantial evidence, we review the evidence in the light most

favorable to the State, and it is permissible to consider only that evidence which supports the guilty verdict. *Id.*

At the close of the State's case, the appellant moved for a directed verdict on the basis that reasonable jurors could not find Derrick Johnson credible. The appellant further asserted Johnson's testimony was directly contradicted by the State's evidence regarding where the victim was found and where other evidence was found. The appellant again moved for a directed verdict at the close of all the evidence on the basis that reasonable jurors could not find Johnson's testimony credible based upon "all the contradictions of the other testimony."

■ On appeal, the appellant asserts that the only evidence which had any tendency to link him with the crime was the testimony of Derrick Johnson. The appellant again submits that such evidence was not credible and was not substantial. However, on matters of credibility of the witnesses and conflicting testimony, we have repeatedly held that the determination of those issues is left to the trier of fact. *Wilson* v. *State*, 320 Ark. 707, 898 S.W.2d 469 (1995). Further, the uncorroborated testimony of one State's witness is sufficient to sustain a conviction. *Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1992).

The appellant points out certain discrepancies in the statements Johnson gave to police and his testimony at trial. At trial, Johnson admitted that in his original statement to the police on the morning of December 19, 1993, the day of the shooting, he said that he did not know anything because he did not want to get involved. He testified that he gave the police a second statement on February 9, 1994, in which he told the truth. In his second statement, Johnson told the police he went to a friend's home and had her dial "911," and he then reported the shooting. At trial, Johnson testified that he dialed "911." The friend testified by way of a transcript from a prior proceeding that Johnson had not come to her house on the night Madaris was shot. She admitted that she told an officer that Johnson called "911" from her home but claimed that Johnson had called and asked her to do so, and she thought it was a prank. Johnson also admitted that he had pled guilty to two counts of delivery of cocaine and made an agreement with the State that in exchange for his truthful testimony in the instant case his punishment on the delivery

of cocaine offenses would be reduced to five years probation, 120 days in the county jail, and a $500 fine.

■ The appellant also asserts that Johnson's testimony conflicts with the physical evidence. We need not examine these conflicts because we review the evidence in the light most favorable to the State, and it is permissible to consider only that evidence which supports the guilty verdict. Nevertheless, much of the testimony can be reconciled with the physical evidence. Johnson testified that he saw Galvin shoot the gun from close range. The appellant submits this conflicts with the testimony of the criminalist with the Arkansas State Crime Laboratory. However, the criminalist testified that her conclusion that the shots were fired at a "distant range" was simply based upon the fact that no smoke residues or gunpowder flakes were discovered, and she stated that "distant range" meant nothing in terms of feet and inches. The appellant also points out that Johnson last saw the victim at the corner of the fence, and the victim was in fact discovered approximately fifteen feet away. Finally, the appellant finds it significant that an expended cartridge was found in the intersection some forty feet away; however, the crime specialist testified it was impossible to determine whether the cartridge was involved with this incident.

■ In sum, this case involves a credibility determination and while Johnson may not have an exemplary background, credibility is for a jury, not an appellate court, to determine. *Larimore* v. *State*, 317 Ark. 111, 877 S.W.2d 570 (1994); *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993).

Affirmed.