Cite as 2023 Ark. App. 515

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III

No. CR-22-537

|  |  |  |
|---|---|---|
| JASON RAY | | **Opinion Delivered** November 8, 2023 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-20-1681] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE LEON JOHNSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED AS MODIFIED |

## WENDY SCHOLTENS WOOD, Judge

I. *Introduction*

Jason Ray appeals from the Pulaski County Circuit Court's sentencing order convicting him of first-degree domestic battering, first-degree terroristic threatening, and aggravated assault on a family or household member. Ray was sentenced to concurrent terms of forty years' imprisonment for first-degree domestic battering as a habitual offender, fifteen years' imprisonment for first-degree terroristic threatening, and fifteen years' imprisonment for aggravated assault on a family or household member. Ray asserts five points for reversal: (1) the evidence is insufficient to support his conviction for first-degree domestic battering; (2) the circuit court erred in applying the habitual-offender-enhancement statute to his first-degree domestic-batting conviction; (3) the circuit court erred in denying his request to

trifurcate the proceedings; (4) the circuit court erred in denying his motion to dismiss for lack of a speedy trial; and (5) the circuit court erred in permitting the State to introduce photographs of the victim. We affirm as modified.

## II. *Facts*

On the night of July 30, 2019, Ray attacked his wife, Victoria Hester, in their home. He was arrested for the incident on March 9, 2020, and charges were filed on May 22. At trial, Hester testified that on the night of the attack, Ray woke her after he had returned home and accused her of cheating on him. She said an argument ensued, and Ray grabbed her by the hair, pushed her to the ground, hit her in the head, strangled her with a phone-charging cable, threatened to kill her, and plunged her face into the dog's water and food bowls. Hester testified that she suffered long-term injuries from the attack, including permanent scarring to her neck, damage to a vocal cord, and a brain injury. The State introduced photographs from the scene of the attack showing some of Hester's injuries.

North Little Rock police detective Lonell Tims testified that after he interviewed Hester and reviewed photographs taken of her, he sought an arrest warrant for Ray. Ray presented the testimony of his fiancée, Rachell Gill, who testified it was her opinion that Hester was untruthful.

At the conclusion of the trial, the jury convicted and sentenced Ray. The sentencing order was entered on July 13, 2022, and this appeal followed.

## III. *Sufficiency of the Evidence*

2

Ray argues that the circuit court erred in denying his motions for directed verdict challenging the sufficiency of the evidence supporting his first-degree domestic-battering conviction. Specifically, he argues that the State failed to present substantial evidence that the prior domestic-battering conduct underlying his previous convictions occurred within the ten years preceding July 30, 2019.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Caple v. State*, 2019 Ark. App. 41, at 5, 569 S.W.3d 353, 357. When reviewing the sufficiency of the evidence, we do not weigh the evidence; we determine whether the evidence in support of the verdict is substantial. *Galvin v. State*, 323 Ark. 125, 127, 912 S.W.2d 932, 933 (1996). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.*, 912 S.W.2d at 933. Evidence is not substantial if it leaves the fact-finder only to speculation and conjecture in choosing between two equally reasonable conclusions and merely gives rise to a suspicion. *Surridge v. State*, 279 Ark. 183, 185, 650 S.W.2d 561, 562 (1983). A directed verdict should be granted where there is no evidence from which the jury could have found, without resorting to surmise or conjecture, the guilt of the defendant. *Winston v. State*, 368 Ark. 105, 110, 243 S.W.3d 304, 308 (2006).

A person commits domestic battering in the first degree if the person (1) commits any act of second- or third-degree domestic battering as defined in Arkansas Code Annotated sections 5-26-304 or 5-26-305, and (2) the person has on two previous occasions been convicted of any act of battery or aggravated assault for conduct that occurred within the ten

years preceding the commission of the current offense against a family or household member. Ark. Code Ann. § 5-26-303(a)(5)(A), (B) (Supp. 2021). Therefore, the jury had to determine whether Ray had committed either second- or third-degree domestic battering and whether he had twice previously been convicted of third-degree domestic battering for conduct occurring within the ten years preceding the July 30, 2019 incident.

On the morning of Ray's trial, the circuit court heard several pretrial motions, including a motion to preclude a habitual-offender-sentencing enhancement for first-degree domestic battering and a motion to trifurcate the case—to try the case in three stages—so that the jury would not learn of Ray's two prior domestic-battering convictions during the guilt phase. Ray asserted that the prior convictions were unduly prejudicial and that the jury should first determine guilt of the current offense of domestic battering in the third degree. He asserted that the prior convictions then should be reviewed by the court and proffered to the jury "just as we do any findings of priors for the habitual allegation."

The court deferred ruling on the issue of the sentencing enhancement, and it denied Ray's motion for trifurcation, ruling that the prior domestic-battering convictions constituted an element of the State's case for first-degree domestic battering that had to be proved in the guilt phase of trial. To address Ray's concerns about undue prejudice from the introduction of the prior domestic-battering convictions, the State said that it would introduce the sentencing orders for Ray's prior domestic-battering convictions into evidence but would not publish the orders to the jury. The State indicated that it would read to the jury from the orders only that information necessary to prove the requisite element of first-

4

degree domestic battering. The court approved this process and, along with the State, confirmed for defense counsel that the sentencing orders containing the prior convictions for third-degree domestic battering would not be published to the jury.[1]

In a bench conference before the first witness was sworn, the State moved to introduce exhibits 1 and 2: (1) a February 12, 2010 Pulaski County third-degree domestic-battering conviction for Ray's conduct on September 2, 2009; and (2) a November 16, 2012 third-degree domestic-battering conviction for Ray's conduct on February 28, 2012. Defense counsel renewed his motion to preclude admission of the prior convictions "during the innocence/guilt portion of the trial" and to try the case in three stages, but the circuit court denied the motion and received exhibits 1 and 2. The State then told the jury the following:

> Ok - on September 9th — I mean, on September 2nd of 2009, the defendant was *convicted* of domestic battery in the third degree, Class A Misdemeanor in Pulaski County. . . .
>
> On February 28 of 2012 the defendant was *convicted* of domestic battery in the third degree, Class A misdemeanor in Pulaski County.

(Emphasis added.) Thus, instead of presenting the jury with the dates on which Ray's prior conduct "occurred," as required by section 5-26-303(a)(5)(B), the State erroneously informed the jury of the dates of Ray's "convictions."

---

[1]On appeal, the State concedes in its brief that the circuit court "noted that those exhibits could not be published to the jury."

5

At the close of the State's case-in-chief, Ray moved for a directed verdict on each charge. He asserted, among other things, that the State failed to prove to the jury the dates on which Ray's prior domestic-battering offenses had occurred:

> They must show . . . Ray has been convicted on two previous occasions of battery against a family or household member in Arkansas and these acts of battery occurred within 10 years of July 30th of 2019. They haven't. All we have are convictions from 2009 and 2012. We do not know when the alleged acts of battery occurred with one of them being in 2009 and this offense July 30th of 2019, how could we even say or speculate the actual acts of domestic battery occurred within 10 years of July 30, 2019? . . . They have to show the acts. What were the acts, not the convictions.

In response, the State asserted that exhibits 1 and 2 had been introduced into evidence and both reflected the dates on which the prior offenses occurred: September 2, 2009, and February 28, 2012. Defense counsel disagreed, and the following exchange ensued:

STATE: . . . I wrote down exactly what I was going to say to not get sideways on this, and I wrote September 2nd, the date of occurrence, 2009, the defendant was convicted of domestic battery. I mean I read the dates of occurrence into the record.

THE COURT: And they were admitted.

DEFENSE: I personally believe she said the word, conviction, but the record will speak for itself because I was listening as well.

THE COURT: All right, it will be denied. The motion for directed verdict will be denied.

At the close of all the evidence, Ray renewed his motion for directed verdict, and the circuit court denied it.

In the State's case, there was no evidence presented to the jury of when Ray's prior conduct occurred. Rather, the jury heard only the erroneous characterization of when Ray's "convictions" occurred. The State concedes on appeal that when reading the sentencing orders to the jury, the prosecuting attorney "misread" them and "misspoke." Furthermore, the jury never received exhibits 1 and 2 pursuant to the circuit court's pretrial ruling. The jury was left to speculate as to when the conduct occurred that resulted in Ray's September 2, 2009, and February 28, 2012, "convictions," which is an explicit and essential element required by the plain language of section 5-26-303(a)(5)(B). Accordingly, because the State failed to prove Ray has on two previous occasions been convicted of any act of battery or aggravated assault for conduct that occurred within ten years preceding the commission of the current offense against a family or household member, we hold that the circuit court erred in denying his motions for directed verdict on the first-degree domestic-battering charge.

The State contends that despite the failure to present proof to the jury of the first-degree domestic battering in its case, the State "clarified" the matter in closing argument. We note that in its closing argument, the State continued to refer to the incorrect dates of Ray's "convictions" and did not mention the dates of his prior domestic-battering conduct. Defense counsel recognized this, and in his closing remarks argued that the State had failed to prove the dates on which the previous domestic-battering conduct had occurred. The State, in rebuttal, made the following argument:

> [Defense counsel] made a point that you didn't know when the offense had occurred within 10 years. The State has submitted as State's Exhibit No. 1 and *2 but you won't get to go back with these, but they were submitted to the Court.* They have a date of offense on here that I read to you guys, which was February 28th of 2012, he committed an act of domestic battery in the third degree. . . .
>
> On the other certified prior, it also gave a date of offense. That is September 2nd of 2009. We have proven to you by these priors that he had committed two prior offenses of domestic battery within 10 years. Those acts did occur.

(Emphasis added.)

Closing remarks of attorneys are not evidence, and the jurors were instructed that the State's remarks were not evidence. AMI Crim. 2d 101(f). Moreover, closing argument was not the time for the State to correct its failure of proof. Under Arkansas Code Annotated section 16-89-111(a) (Repl. 2013), the State was required to present the trier of fact with all evidence necessary to support the elements of the charge of first-degree domestic battering in its case-in-chief. Failing that, the court could, "for good reason, in furtherance of justice," authorize the State to present evidence on its original case after it rested. Ark. Code Ann. § 16-89-111(c). The State never reopened its case.

These statutory mechanisms are complemented by Arkansas Rule of Criminal Procedure 33.1, which dictates the timing of and manner for moving for directed verdict. One of the reasons Rule 33.1(a) requires a motion for directed verdict to be specific is to allow deficiencies in the proof to be identified so that the State may, as section 16-89-111(c) provides, supply the missing proof if the court finds it to be warranted. *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005). The rule is clear, moreover, that motions for

directed verdict specifying evidentiary deficiencies in the State's case—and hence any effort by the State to reopen the record to supply missing proof—must be made promptly at the close of the State's case-in-chief and at the close of all the evidence. The State made no effort to correct the deficiency in its proof, even though the deficiency was brought to its attention in Ray's timely directed-verdict motions at the close of the State's case-in-chief and again at the close of all the proof.

Our inquiry does not end there, however. When the proof offered supports a conviction on a lesser-included offense, this court may reduce the punishment to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, or choose something in between, depending on the circumstances. *Tigue v. State*, 319 Ark. 147, 152–53, 889 S.W.2d 760, 762 (1994); *see also Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003); *Inskeep v. State*, 2016 Ark. App. 135, 484 S.W.3d 709.

Ray does not argue that the proof is insufficient to support a conviction for the lesser-included offense of third-degree domestic battering, which, as the first element of the charged offense, the jury found beyond a reasonable doubt. A person commits the offense of third-degree domestic battering if, with the purpose of causing physical injury to a family or household member, he or she causes physical injury to a family or household member. Ark. Code Ann. § 5-26-305(a)(1). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202 (Repl. 2013). The law presumes that a person intends the natural and probable consequences of his or her acts.

9

*Spight v. State*, 101 Ark. App. 400, 402, 278 S.W.3d 599, 600–01 (2008). Physical injury means impairment of physical condition or the infliction of substantial pain, bruising, swelling, or visible marks associated with trauma. Ark. Code Ann. § 5-26-302(2) (Supp. 2021). And finally, a spouse is a family or household member. Ark. Code Ann. § 5-26-302(2) (Supp. 2021).

Hester's testimony established that she and Ray were married and lived together at the time of the attack; thus, she was a member of Ray's household. Ark. Code Ann. § 5-1-102(14). She said when he arrived home that night, he woke her and began arguing with her. He subsequently took her by her hair, threw her to the ground, straddled her, hit or kicked her in the back of her head, strangled her with a phone cord, plunged her face into water and the dog-food bowl, and threatened to kill her "once and for all." She said she fought him off and called the police, who took multiple photographs that showed some of her physical injuries, including marks associated with trauma on her neck. She further testified that she suffered lasting injuries, including permanent scarring on her neck, a damaged vocal cord, and brain injuries.

We hold that substantial evidence supports a conviction on the lesser-included offense of third-degree domestic battering. Accordingly, we modify Ray's sentence to one year of imprisonment, the maximum statutory sentence, Ark. Code Ann. § 5-26-305(b)(1) (Supp. 2021); Ark. Code Ann. § 5-4-401(b)(1) (Repl. 2013), to run concurrently with his fifteen-year sentences for first-degree terroristic threatening and aggravated assault.

IV. *Habitual-Offender Sentencing Enhancement*

For his next point on appeal, Ray argues that the circuit court erred in applying the habitual-offender sentencing-enhancement statute, pursuant to Arkansas Code Annotated section 5-4-501(d), to his first-degree domestic-battering conviction. In light of our holding that insufficient evidence supports Ray's first-degree domestic-battering conviction, we hold that Ray's challenge to the habitual-offender sentencing enhancement for that conviction is moot.

## V. *Trifurcation*[2]

On the morning of trial, Ray moved to preclude the admission of his prior convictions "during the innocence/guilt portion" of his trial for first-degree domestic battering claiming it would be overly prejudicial. He requested that his case be trifurcated—tried in three stages. First, he asserted that there should be a finding of guilt by the fact-finder on the current domestic-battering offense. If there was a finding of guilt, then the circuit court would decide whether the two prior convictions for domestic battering met the requirements set forth in section 5-26-303(a)(5)(B). If so, the court would then proffer the prior convictions to the jury at the close of the evidence. Relying on this court's holding in *Crayton v. State*, 2018 Ark. App. 110, 543 S.W.3d 544, the circuit court denied Ray's motion.

On appeal, Ray argues that the circuit court erred by denying his motion to trifurcate the proceedings. Ray reasserts his argument that it was unfairly prejudicial for the State to

---

[2]Although we have determined that the evidence was insufficient to sustain Ray's conviction for first-degree domestic battering, we address his trifurcation argument because it alleges trial error that is relevant to the conviction for the lesser-included offense of third-degree domestic battering that we have imposed.

introduce prior convictions for domestic battering in the same stage of trial in which it must prove the current offense of domestic battering[3] and that trifurcation is similar to what is required in DWI trials that involve proof of multiple prior convictions.

We cannot say that the circuit court erred in denying Ray's motion to trifurcate. First, Arkansas Code Annotated section 16-97-101 establishes a bifurcated procedure that "shall govern jury trials which include any felony charges." Ark. Code Ann. § 16-97-101(1)–(3) (Repl. 2016). This statute provides for a guilt phase and a penalty phase. *Daniels v. State*, 322 Ark. 367, 375, 908 S.W.2d 638, 641 (1995). It does not contain a mechanism for further separating the guilt phase of trial as to each element of an offense.

Second, *Crayton* also supports the circuit court's denial of Ray's motion to trifurcate. In *Crayton*, the appellant argued that the circuit court erred by admitting evidence of the previous domestic-battering convictions during the guilt phase of his trial and by using the Arkansas model jury instruction, AMI Crim. 2d 2610, on first-degree domestic battering. 2018 Ark. App. 110, at 1, 543 S.W.3d at 545. This court specifically held that the previous convictions were elements of first-degree domestic battering, not a sentence enhancement, and that the circuit court correctly admitted evidence of those elements in the guilt phase of

---

[3]Ray's argument is confined to the conviction for first-degree domestic battering. He makes no argument on appeal, and made none below, regarding the joinder of the other offenses for which he was tried with the first-degree domestic-battering charge. If an appellant does not file a motion to sever under Rule 22.1(a) of the Arkansas Rules of Criminal Procedure and does not otherwise object to the joining of charges, the issue is waived. *Thompson v. State*, 338 Ark. 564, 569–70, 999 S.W.2d 192, 195–96 (1999).

the appellant's trial. *Id.* at 4–5, 543 S.W.3d at 547. This court further observed that the model jury instruction supported the circuit court's decision to require proof of the prior convictions in the guilt phase. *Id.* at 5, 543 S.W.3d at 547.

The model jury instruction provides that the jury will be instructed on both elements of section 5-26-303(a)(5), together, in the guilt phase of trial. AMI Crim. 2d 2610. *Crayton* held that the prior-conviction element in section 5-26-303(a)(5)(B) is not a sentencing enhancement but is an element that forms the substantive offense of first-degree domestic battering that is properly proved in the guilt phase. Neither *Crayton*, nor section 5-26-303(a)(5), nor the applicable jury instruction supports Ray's argument for trifurcated proceedings.

The procedure in DWI cases does not support Ray's argument for trifurcation. In DWI jury trials, the guilt and sentencing stages are bifurcated, not trifurcated. In contrast with the first-degree domestic-battering statute, the statute defining the substantive offense for DWI contains no prior-conviction element and is separate from the DWI sentencing statute, which requires proof of prior DWI convictions. Ark. Code Ann. §§ 5-65-103 and -111 (Supp. 2021). In these cases, the jury first determines, in the guilt phase of trial, whether the defendant committed the offense of DWI. If the defendant is found guilty, the jury then determines the number of prior DWI convictions in the sentencing phase.

Although our supreme court has held that prior DWI convictions are elements of the crime of DWI, fourth offense, it has made it clear that proof of earlier DWI offenses is not appropriate until the sentencing phase of a DWI trial. *State v. Sola*, 354 Ark. 76, 87, 118

13

S.W.3d 95, 101 (2003). In *Sola*, the supreme court expressly stated that "the State need not prove a defendant's [previous] DWI offenses to determine his guilt." *Id.* at 88, 118 S.W.3d at 101. "It is not until the sentencing phase of the trial that the State need show the earlier offenses for purposes of sentencing under § 5-65-111(b)(3) for multiple offenses." *Id.* Unlike DWI convictions, whether Ray committed two prior domestic-battering convictions for conduct that occurred in the past ten years was an element of the offense of first-degree domestic battering for the guilt phase of trial, not the sentencing phase. Ark. Code Ann. § 5-26-303(a)(5); *Clayton*, *supra.* Therefore, the sentencing procedure applicable to DWI cases does not apply to the instant case and does not support the trifurcation procedure Ray seeks.

Finally, we note Ray's reliance on *Old Chief v. United States*, 519 U.S. 172 (1997), a decision in which the defendant's offer to stipulate to the fact of a prior conviction, which was conclusive evidence of the prior-conviction element the government had to prove, rendered the government's introduction of additional relevant—but unnecessary—evidence about the conviction unduly prejudicial under Rule 403 of the Federal Rules of Evidence. The holding in *Old Chief* is limited to federal cases involving an element requiring proof of only felon status, such as in felon-in-possession cases. *Old Chief*, 519 U.S. at 183 n.7, 190–91. Our supreme court adopted *Old Chief*'s rationale in *Ferguson v. State* and similarly limited its application to proof of felon status. 362 Ark. 547, 555, 210 S.W.3d 53, 57 (2005). It stated that "[c]ircuit courts still have discretion to admit evidence concerning the nature of a conviction if it is relevant to an issue in the case other than the defendant's status as a convicted felon." *Id.* at 553, 210 S.W.3d at 56. The question before this court does not

14

involve a defendant's offer to stipulate to an essential element involving only his status as a felon, as in *Old Chief* and *Ferguson*. Therefore, the rationale of these cases does not support Ray's request for trifurcation.

Considering the foregoing, we cannot say that the circuit court erred in denying Ray's motion to trifurcate and in receiving the State's prior-conviction evidence in the guilt stage of the trial. Accordingly, we affirm.

## VI. *Speedy Trial*

Ray argues that the circuit court erred in denying his motion to dismiss for violation of his right to a speedy trial. Rule 28.1 establishes a twelve-month limitation period for trying a defendant. Ark. R. Crim. P. 28.1 (2023). The time for trial begins to run on the date of the defendant's arrest or the filing of the information, whichever occurs first. Ark. R. Crim. P. 28.2(a); *Quackenbush v. State*, 2023 Ark. App. 58, at 2, 660 S.W.3d 889, 891. It continues to run uninterrupted except during any applicable "excluded periods" set forth in Rule 28.3. Ark. R. Crim. P. 28.1.

A delay of more than twelve months between the triggering date and the date of trial constitutes a prima facie violation of the rule. *Quackenbush*, 2023 Ark. App. 58, at 2, 660 S.W.3d at 892. When a defendant demonstrates a prima facie violation, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Id.*, 660 S.W.3d at 891. A defendant who is not brought to trial in a timely manner is entitled to dismissal of the charges with an absolute bar to prosecution. Ark. R. Crim. P. 30.1; *Quackenbush*, 2023 Ark. App. 58, at 2, 660 S.W.3d at 891. On appeal, this court

15

conducts a de novo review to determine whether specific periods of time are excludable. *Quackenbush*, 2023 Ark. App. 58, at 2, 660 S.W.3d at 892.

The record reflects that Ray was arrested on March 9, 2020, and he was not tried until June 9, 2022. He moved to dismiss on June 8. The filing of a speedy-trial motion to dismiss tolls the time for trial and establishes the end date for the speedy-trial calculation. *Eagle v. State*, 2012 Ark. 371, at 4; *Parker v. State*, 93 Ark. App. 472, 476, 220 S.W.3d 238, 243 (2005). Therefore, the period of time between March 9, 2020, and June 8, 2022, is 822 days—a prima facie showing of a speedy-trial violation.

The hearing on Ray's motion to dismiss for a speedy-trial violation was held on the morning of trial. Much of the dispute between the parties was due to the closure of the courthouse due to the COVID-19 pandemic. Ray argued that there were no written orders or docket entries reflecting that particular window of time would be excluded due to the courthouse closure. The circuit court stated that it believed the record was clear and that the parties understood that delays due to COVID-19 would be excluded. Ultimately, the court found that Ray was brought to trial within 365 days of his arrest and orally denied Ray's speedy-trial motion.

On appeal, Ray concedes that there are several periods of time that are excluded from the speedy-trial calculation: August 3 to October 4, 2020 (62 days); February 21 to June 7, 2021 (107 days); and November 2, 2021,[4] to June 9, 2022 (220 days). However, Ray claims

---

[4]Ray's brief states November 21, but this appears to be a typographical error.

that, at most, only 368 of the 822 days were tolled; therefore, the State failed to bring him to trial within 365 days in violation of his right to a speedy trial. He argues that neither the court nor the parties understood that some delays were due to the pandemic and that the court did not sufficiently document delays. Because this court conducts a de novo review on appeal to determine whether specific periods of time are excludable under the speedy-trial rules, we discuss each of the relevant periods. *Frederick v. State*, 2012 Ark. App. 552, at 6, 423 S.W.3d 649, 653.

## A. March 9 to August 2, 2020

After Ray's arrest on March 9, 2020, his plea-and-arraignment hearing was scheduled to occur by Zoom videoconference on August 3. Ray, who was out on bond, failed to appear on August 3, 2020. The 147 days between March 9 and August 2, 2020, are charged to the State.

## B. August 3 to October 4, 2020

Ray failed to appear on August 3, and this started tolling the speedy-trial clock. Ark. R. Crim. P. 28.3(e) (stating the period of delay resulting from the absence or unavailability of the defendant is excluded from the speedy-trial calculation). Ray's plea-and-arraignment hearing was rescheduled for September 1, and his appointed attorney appeared by Zoom videoconference. The attorney waived Ray's in-person appearance, entered a plea of not guilty on his behalf, and further agreed that speedy trial was tolled from August 3 to October 4 due to the COVID-19 pandemic and closure of the courthouse. The circuit court stated

17

on the record that the time was tolled, and Ray does not contest the exclusion of this period of sixty-three days.

## C. October 5, 2020, to February 21, 2021

At Ray's plea-and-arraignment hearing on September 1, 2020, the court scheduled the omnibus hearing for February 22, 2021, and the jury trial for March 9. Although the courthouse was closed on September 1 due to the COVID-19 pandemic,[5] the courthouse was expected to reopen on October 4. Therefore, when the circuit court initially scheduled Ray's trial for March 9, 2021, it was not doing so due to the COVID-19 pandemic or the closure of the courthouse. Rather, it scheduled the first trial date as "a normal part of the timeline in criminal trials" to a time when the courthouse was expected to be open. *Quackenbush*, 2023 Ark. App. 58, at 7, 660 S.W.3d at 894. Therefore, the delay from October 5, 2020, to March 9, 2021, had nothing to do with the pandemic and was not excludable under Rule 28.3(h). *Id.*, 660 S.W.3d at 894.[6] Speedy-trial time continued to run for the

---

[5]Effective July 1, 2020, the Arkansas Supreme Court lifted its previous suspension of in-person proceedings due to the COVID-19 pandemic, but it did not mandate their resumption. *In re Response to the COVID-19 Pandemic*, 2020 Ark. 249, at 2–3 (per curiam). The resumption of in-person proceedings was left to the discretion of the individual courts, and the per curiam provided that any delay in proceedings due to precautions against the COVID-19 pandemic shall presumptively constitute good cause under Arkansas Rule of Criminal Procedure 28.3(h). *Id.* at 2–3.

[6]Although on February 12, 2021, the Arkansas Supreme Court subsequently reinstated and extended the suspension of jury trials through April 30, 2021, *In re Response to the COVID-19 Pandemic*, 2021 Ark. 30 (per curiam), the reinstatement did not apply retroactively to Ray's initial March 9, 2021 trial setting when it was made on September 1, 2020. *Quackenbush*, 2023 Ark. App. 58, at 7, 660 S.W.3d at 894 (per curiam suspending all in-person proceedings in all courts beginning April 3, 2020, had no effect on the April 3, 2020 setting that was made on February 28, 2020, before the per curiam was issued).

period beginning on October 5, 2020, until the next excludable period, which began on February 22, 2021, which is when Ray failed to appear at the omnibus hearing. Therefore, the time from October 5, 2020, to February 21, 2021—140 days—is charged to the State.

### D. February 22 to March 2, 2021

On February 22, 2021, Ray failed to appear for his omnibus hearing. He next appeared on March 3. The ten-day period from February 22 to March 2, 2021, is excludable from the speedy-trial calculation due to Ray's failure to appear. Ark. R. Crim. P. 28.3(e).

### E. March 3 to August 30, 2021

At the March 3 hearing, Ray's counsel announced that the case was set for trial on March 9 and that he had advised Ray that speedy trial was going to be tolled because of the COVID-19 pandemic and the closure of the courthouse pursuant to "the per curiam." Two weeks before the March 3 hearing, on February 12, our supreme court issued a per curiam extending the suspension of jury trials to April 30 due to "a continued high level of COVID-19 positive tests and hospitalizations." *In re Response to COVID-19 Pandemic*, 2021 Ark. 30, at 1 (per curiam). Pursuant to the per curiam, Ray asked the court to reschedule the omnibus and jury-trial dates with "[s]peedy trial tolled until the next setting," and the circuit court did so, setting Ray's omnibus hearing date on August 30 and a trial on September 14. Thus, the record clearly demonstrates that the circuit court rescheduled Ray's March 9 jury trial to September 14 due to precautions against the COVID-19 pandemic pursuant to the Arkansas Supreme Court's COVID-19 per curiam. However, at the omnibus hearing on August 30, the State moved for a continuance, which was granted by the circuit court. This ended the

time that had been tolling since March 3. Therefore, the time from March 3 to August 30, 2021—180 days—is excluded from the speedy-trial calculation.

### F. August 31 to November 1, 2021

After the circuit court granted the State's motion for a continuance on August 30, the court rescheduled the September 14 trial to November 2. The time between August 31 and November 1, 2021—sixty-three days—is charged to the State. *Romes v. State*, 356 Ark. 26, 40, 144 S.W.3d 750, 759 (2004).

### G. November 2, 2021, to June 8, 2022

On October 29, 2021, Ray moved for a continuance of his November 2 trial. At a hearing on November 2, the circuit court granted Ray's motion and rescheduled the trial for June 9, 2022, and the record reflects the court confirmed that "[s]peedy trial is tolled" for this period. The supreme court has held that delays resulting from continuances requested by the defendant are excluded from the calculation of the speedy-trial period. *Dodson v. State*, 358 Ark. 372, 382, 191 S.W.3d 511, 517 (2004). Therefore, we hold that the 219-day period from November 2, 2021, until June 8, 2022, when Ray filed his motion for speedy trial, is excluded from the speedy-trial computation. *Eagle*, 2012 Ark. 371, at 4 (holding that the filing of a speedy-trial motion tolls the time for trial and establishes the end date for the speedy-trial calculation); *Parker*, 93 Ark. App. at 476, 220 S.W.3d at 243 (same). Ray does not contest the exclusion of this period.

20

In sum, the total time excluded from the speedy-trial equation is 472 days. The total time charged to the State is 350 days. Because Ray was brought to trial within 365 days, we affirm the denial of his motion to dismiss on speedy-trial grounds.

## VII. *Admissibility of Photographs*

During Hester's testimony at trial, the State sought to introduce seven photographs, five of which depicted her injuries. The photographs showed, among other things, red marks on her neck that she testified had been caused by the phone cord that Ray had wrapped around her neck. Hester testified that the photographs fairly and accurately depicted her injuries on the date of the attack as well as her clothing, the phone cable, and the dog bowls. The photographs were taken by a police officer, and the State explained that all the photographs had been printed on cardstock and had not been altered or enhanced. Ray objected, arguing that Hester could not authenticate the photographs because she was not the one who had taken the photographs. Ray also asserted that the photographs were duplicates and inadmissible under Rule 1003 of the Arkansas Rules of Evidence because they had been printed on glossy card stock and accentuated the purported injuries depicted in the photographs. The circuit court overruled the objections, and the photographs were admitted.

On appeal, Ray concedes that Hester properly authenticated the photographs. But he reasserts his argument that the photographs were inadmissible as duplicates because they were on glossy card stock and exaggerated the color of Hester's skin.

First, we hold that the photographs of which Ray complains are not duplicates. Arkansas Rule of Evidence 1001(3) (2023) provides that an "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original." Ark. R. Evid. 1001(3). The State indicated at trial that it merely printed the photographs on cardstock without altering or enhancing them. Thus, the printouts of the photographs were "original" under Rule 1001(3).

However, assuming that the photographs were duplicates, Rule 1003 of the Arkansas Rule of Evidence provides:

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Ark. R. Evid. 1003 (2023). The circuit court found that it was not unfair to admit the photographs. This court will not reverse a circuit court's decision to admit evidence unless the court abused its discretion in doing so. *Jackson v. State*, 2018 Ark. App. 330, at 9, 552 S.W.3d 55, 60. An abuse of discretion requires a showing that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*, 552 S.W.3d at 60. We cannot say, in light of Hester's testimony that the photographs fairly and accurately depicted their contents, that the circuit court abused its discretion by overruling Ray's objection. Accordingly, we affirm the circuit court's decision on this point.

VIII. *Conclusion*

We hold that the evidence was insufficient to support the first-degree domestic-battering conviction; however, the evidence is sufficient to support a conviction for the lesser-included offense of third-degree domestic battering. Therefore, we modify Ray's sentence to one year in prison to run concurrently with his sentences for first-degree terroristic threatening and aggravated assault. Our holding related to Ray's conviction for first-degree domestic battering renders his challenge to the habitual-offender sentencing-enhancement statute moot. We affirm all remaining points on appeal.

Affirmed as modified.

ABRAMSON, VIRDEN, THYER, and HIXSON, JJ., agree.

BARRETT, J., dissents.

STEPHANIE POTTER BARRETT, Judge, dissenting. Appellant Jason Ray appeals his conviction from the Circuit Court of Pulaski County of one count of first-degree domestic battering, one count of first-degree terroristic threatening, and one count of aggravated assault on a family or household member. Ray asserts five points for reversal; however, I must respectfully dissent from the majority's modification of his sentence on first-degree domestic battery based on the sufficiency of the evidence.

The majority states that to address Ray's concerns about undue prejudice from the introduction of the prior domestic-battering convictions, the State said that it would introduce the sentencing orders for Ray's prior domestic-battering convictions into evidence but would not publish the orders to the jury. That is incorrect. On page 78 of the record transcript, the prosecutor stated, "So, he has one incident from 2009 and one incident from

23

2012.  I do have the certified priors for those, so I believe I would just ask to approach and if they're going to be admitted as certified priors, then I would just ask that they be admitted and then publish them to the jury."  She did not ask for a ruling and the court did not make one.  The defense attorney moved the court to trifurcate the proceedings in order to keep the two prior convictions from the jury until after guilt was established on the current battery charge.  That request was denied.  Defense counsel also moved that the court not read from the criminal information that Ray was charged as having two prior convictions.  That request was also denied as it was an element of the offense.  Defense counsel argued that allowing the jury to know that Ray had twice been convicted of domestic battery would prejudice his client.  The court reiterated that it was an element of the offense that the State had to prove and that it could not grant his request, stating, "[B]ecause people get up and say, you can't talk about it at all because it's not part of what she has to prove. And then you can move for a directed verdict and say she didn't prove this.  This is what she's going to have to prove to the jury." The defense attorney responded, "I will not do that."  It turns out, that is exactly what the defense did.  The requests of defense counsel to read and not publish the prior convictions is tantamount to a stipulation of the prior convictions.  With that being said, we cannot tell from the record whether the documents were published or not.  The State clearly intended to publish them prior to trial.  At the time of their introduction, defense counsel asked, "Just to be clear, I realize that maybe it's just a term of art, those are not going to be published to the jury; is that correct?"  The court responded, "They are not.  They're just going to read them."  Defense counsel asked to see the exhibits and then the circuit court

24

entertained a lunch break. After lunch, defense counsel renewed his objection and the following colloquy occurred:

PROSECUTOR: Okay, so at this point, I would ask to admit State's Exhibit 1 and 2. Do I give this to Ms. Poe?

THE COURT: Yes, give it to Ms. Poe.

PROSECUTOR: And then I do intend to ~ publish to the jury ~ read what we had talked about.

THE COURT: Yeah, you can read that, then give it to her. Okay.

Clearly, the prosecutor intended at that point to publish to the jury. This exchange took place AFTER the court initially said that they would not be published. From reading the transcript, it is unclear whether they were published or not.

The majority has speculated that the jury did not see the documents and that because it had not, the motion for directed verdict should have been granted. I disagree. It is not the function of the appellate court to try to figure out what the jury saw, heard, or paid attention to, or what their reasoning was in reaching a verdict. It would be impossible to do. It is well settled that this court can affirm the circuit court when it has reached the right result, even though it has announced the wrong reason. *Sluder v. Steak & Ale of Little Rock, Inc.*, 368 Ark. 293, 299, 245 S.W.3d 115, 119 (2006). Similarly, if a jury reached the correct result, but its reasoning was flawed, we would still affirm. The only difference being that we do not know a jury's reasoning as it is not announced. Our responsibility is to review the record to determine whether there is evidence to support its verdict. There is evidence to support the jury's verdict for first-degree domestic battery as State's exhibits 1 and 2 are the

25

judgment and conviction orders that correctly reflect that the commission date of both charges is within the ten-year period required.

The circuit court did not abuse its discretion by denying Ray's directed-verdict motions as the commission dates of the offenses were introduced and admitted into evidence as exhibits. Any confusion there might have been regarding the prosecutor's misstatement was corrected in closing arguments by the State without objection. Closing arguments must be confined to questions at issue, the evidence introduced during trial, and all reasonable inferences and deductions that can be drawn therefrom. *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999). The essence of a closing argument is to afford counsel the opportunity to focus attention on those factual matters developed during the trial, as well as the instructions that tend to support counsel's theory of the case. This is, indeed, the most propitious moment for counsel to stress those things that he wants the jury to see and hear. *See Powell v. Sears & Roebuck*, 268 Ark. 1093, 598 S.W.2d 449 (1980). Furthermore, we have held that a prosecutor is not barred from reading from evidence during closing argument. *See, e.g.*, *Wright v. State*, 2022 Ark. App. 381, 653 S.W.3d 803; *Tyler v. State*, 2021 Ark. App. 23, at 7, 616 S.W.3d 663, 667.

It is important to note that the record shows that the prosecutor asked the court for exhibits 1–3, which were the judgment and conviction orders, and received them before she began her closing. Prosecutors often hold up exhibits or place them on projectors for the jury to see even if the words "may I publish to the jury?" are not spoken and transcribed into the record. We know that the exhibits were not allowed to go back with the jury, a clear

26

error because they contained proof that was an element of the charge, but we do not know whether the jury saw the exhibits or reasoned that the offense dates must be within ten years or the court would not have allowed them into evidence because otherwise, they would be inadmissible irrelevant evidence. Because we do not know what the jury saw, heard, or paid attention to, we rely on the record to determine whether substantial evidence exists to support the jury's verdict. The record does so support.

As the majority points out, closing remarks of attorneys are not evidence. The prosecutor's statements regarding the commission dates are not evidence. The evidence is the judgment and commitment orders, which contain the commission dates. Those were not introduced in closing arguments, but closing arguments pointed out to the jury relevant evidence contained in the exhibits that represent sufficient evidence that an element of the offense has been proved. Whenever trial counsel argues matters that are beyond the record and states facts or makes assertions not supported by any evidence that are prejudicial to the opposite party, there is clearly error. *Walker v. State*, 138 Ark. 517, 212 S.W. 319 (1919); *McElroy v. State*, 106 Ark. 131, 152 S.W. 1019 (1913); *Willyard v. State*, 72 Ark. 138, 78 S.W. 765 (1904); *Fakes v. State*, 112 Ark. 589, 166 S.W. 96 (1914). That is not the case here.

In this case, the record supports the conviction because the judgment and conviction orders of prior convictions listing the occurrence dates within the past ten years are in the record.

When the facts of this case are viewed in the light most favorable to the State, this court should affirm the denial of Ray's motions for directed verdict and find that there was sufficient evidence to support the conviction.

I would affirm on all five points.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Drew Curtis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.