Cite as 2025 Ark. App. 243

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-24-385

| | |
|---|---|
| QUINTON EARL SETTLES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 23, 2025<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60CR-23-569]<br><br>HONORABLE LATONYA HONORABLE, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Quinton Settles appeals his conviction by a Pulaski County Circuit Court jury of first-degree domestic battery. We affirm.

I. *Relevant Facts*

On October 31, 2023, Settles was charged by amended felony information with one count of first-degree domestic battery, one count of tampering (attempting to induce another person to testify or inform falsely), and one count of violation of a no-contact order.

On November 13, 2023, the State moved to admit statements under the doctrine of forfeiture by wrongdoing, asserting that Settles's conduct had caused the unavailability of the witness, Ruthia Jones. The State alleged that on November 22, 2022, Jones gave a statement to the police that Settles, her ex-boyfriend, had severely beaten her and thrown

her into a wooden hutch, which had caused her to be paralyzed. Jones did not report the allegations to police until two weeks after the incident because she waited until she was transferred to another facility, and Settles was no longer with her in the hospital.

Following Settles's arrest, a no-contact order was issued on January 5, 2023. Despite this order, Settles called Jones 387 times and sent her 191 text messages from January 5 to October. During these communications, Settles instructed Jones to have the no-contact order removed and provided her with a script to recant her accusations against him. He promised her love, marriage, financial assistance, and medical care if she dropped the charges. Settles told Jones that "[she] won't get in trouble" for ignoring the subpoena to appear in court, and he assured her that if she did not appear to testify, the charges would be dropped. Additionally, Settles involved a third party, "K Ray," to pressure Jones into signing an affidavit recanting her accusations. Settles urged K Ray to call Jones and pretend to be an attorney's assistant "to see where her head is at." He instructed K Ray to "stay on her, bro." Eventually, Jones ceased communication with the prosecutor and missed the meeting with the prosecutor scheduled for October 30.

On November 9, 2023, a hearing was held. The court ruled that only evidence available as of September 11, 2023, would be admissible, excluding everything obtained after that date.[1] The trial was scheduled for November 14, 2023, and on the morning of the trial,

---

[1]September 11, 2023, is significant for reasons related to discovery and not the substance of the evidence.

a hearing was conducted to address final pretrial motions, including the State's motion to admit Jones's statements to investigators under the doctrine of forfeiture by wrongdoing.

During the hearing, the State presented evidence that Settles's conduct had caused Jones's unavailability. Officer Aaron Nickson testified that he served Jones with a subpoena by telephone on October 31, 2023, but Jones expressed her unwillingness to testify and ceased communication on November 7, 2023. The State argued that Settles's relentless phone calls and coercive behavior intimidated Jones, causing her to fear retaliation and refuse to testify. The court found that Settles's actions constituted wrongful conduct that caused Jones's absence, thereby extinguishing his right to confront her.

At the trial, Dr. Brian Hohertz, the emergency room physician who treated Jones, testified that she sustained a laceration to her right eye, paralysis of her lower extremities and left arm, and spinal fractures at C-6 and C-7.

Officer Anthony Strout of the North Little Rock Police Department testified that on the night of November 10, 2022, he was called to the Baptist Hospital emergency department in Little Rock to investigate a report of domestic battery. Strout recalled that Jones told him that she and Settles had gotten into an argument over a text message from another man, and she had decided to walk away from Settles when he grabbed her, slammed her head into the wall a few times, then picked her up and slammed her into a wooden hutch. Jones stated that she fell to the floor and heard a snap and realized she could not move. Settles told her to get up, and he punched her face when she did not. When Settles realized that Jones was paralyzed, he placed her on the couch and called an ambulance.

3

Detective Lonnell Tims testified that he visited Jones at the hospital on the evening of November 22 when Settles was not in Jones's room. Detective Tims recalled that when he took her statement that evening, Jones was emotional and afraid but that she was lucid, alert, and not under the influence of any drugs. A transcript of the interview was provided to the jury. Detective Tims's testimony was the same as Officer Strout's regarding Jones's statement about how Settles caused her injuries. Additionally, Detective Tims testified that Jones told him that when she first arrived at the hospital Settles lied to the staff, telling them that she had fallen. Jones explained that Settles was always with her at the hospital, stating that "he would be by her side and the only time he would leave would be for a few hours after she was fed and given medication to sleep, and then she would wake up and he would be back in the room." She told Detective Tims she was terrified, worried about her living situation, and afraid for her future. Jones stated that her long-term prognosis was that she might be able to regain the ability to walk and have feeling in her limbs in a year, but that was not certain. Detective Times testified that on February 9, Jones called him to let him know her new phone number and address at the rehabilitation facility. He recalled that at the time, Jones was calm and relieved to hear of Settles's arrest but still worried about her future in general. He explained that in his experience, people often delayed reporting domestic violence because they are still afraid of the perpetrator, or they feel guilty.

The jail record of Settles's phone calls was admitted into evidence, and the audio recording of the relevant calls was played for the jury. The jury heard Settles tell Jones, "If I get convicted, then I'm not going to be able to be around. . . . When these folks put me in

court and convict me, I'm not going to be able to be around you, woman. Is that what you want?" Settles told Jones, "As long as you don't come to court, then they have to throw it out. I need to be there so I can take care of you." He told Jones he wanted to marry her, and she responded that she wanted him to treat her "the way that you're supposed to. You have times when you let your anger get the best of you." Settles repeatedly instructed Jones not to answer phone calls from the prosecutor and urged her to recant her previous statements. He told her that she needed to tell the investigators that she was on heavy medication when she made the statement,

> otherwise I am not going to see you for a long time. Do you want that? You don't want me back there helping you? You can call and get me a speedy court date. Just say that you're somebody else, and you can call the NLRPD to get that thing taken off of me. I'm trying to be there to get back to you.

In summary, the recordings showed that Settles repeatedly instructed Jones to lie, avoid the prosecutor, get the no-contact order lifted, and swear an affidavit recanting her previous statements. During some of the phone calls, he yelled at her. At one point, Jones told Settles to stop calling her, but Settles continued to call.

After the close of the State's case, Settles moved for a directed verdict. He argued that the State had not met its burden of proving "that there was a manifest extreme indifference to the value of human life or the other elements required for domestic batter[ing] one[.]" The trial court denied the motion. The defense rested without calling any witnesses, and Settles renewed his motion for a directed verdict, which was denied.

Settles was found guilty of first-degree battery and sentenced to twenty years' incarceration in the Arkansas Division of Correction. Settles timely filed his notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Sufficiency of the Evidence

For his second point on appeal, Settles contends that there was insufficient evidence to support the jury's decision that the injuries he caused Jones were under circumstances manifesting extreme indifference to human life.[2] We disagree.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Caple v. State*, 2019 Ark. App. 41, at 5, 569 S.W.3d 353, 357. When reviewing the sufficiency of the evidence, we do not weigh the evidence; we determine whether the evidence in support of the verdict is substantial. *Galvin v. State*, 323 Ark. 125, 127, 912 S.W.2d 932, 933 (1996). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.*, 912 S.W.2d at 933. Evidence is not substantial if it leaves the fact-finder only to speculation and conjecture in choosing between two equally reasonable conclusions and merely gives rise to a suspicion. *Surridge v. State*, 279 Ark. 183, 185, 650 S.W.2d 561, 562 (1983). Furthermore, "[t]his court views the evidence in the light most favorable to the verdict, and only evidence supporting

---

[2]Settles presents the sufficiency-of-the-evidence issue as his second point on appeal. Because of double-jeopardy concerns, the court of appeals considers a challenge to the sufficiency of the evidence before addressing other arguments. U.S. Const. Amend. V. *See Wingfield v. State*, 2019 Ark. App. 111, 572 S.W.3d 434.

6

the verdict will be considered." *Id.* In determining whether there was substantial evidence to support the verdict, this court looks at all the evidence presented, including any evidence that is alleged to have been admitted in error. *See Arendall v. State*, 2010 Ark. App. 358, at 7, 377 S.W.3d 404, 410; *Rounsaville v. State*, 2009 Ark. 479, at 7, 346 S.W.3d 289, 293; *Goodwin v. State*, 373 Ark. 53, 281 S.W.3d 258 (2008).

A directed verdict should be granted when there is no evidence from which the jury could have found, without resorting to surmise or conjecture, the guilt of the defendant. *Winston v. State*, 368 Ark. 105, 110, 243 S.W.3d 304, 308 (2006).

Arkansas Code Annotated § 5-26-303(a)(3) (Repl. 2024) provides that a person commits first-degree domestic battering if the person causes serious physical injury to a family or household member under circumstances manifesting extreme indifference to the value of human life.

The circuit court did not err in denying Settles's motion for a directed verdict. Settles relies on *Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994), to support his argument that there was insufficient evidence that the injuries he caused Jones were under circumstances manifesting extreme indifference to the value of human life. His argument is misplaced. In *Tigue*, there was evidence that the appellant held a child's hands under hot water such that her hands required skin grafts to heal. We reversed the appellant's conviction for first-degree battery because his conduct, though causing pain and injury, did not manifest an extreme indifference to the value of human life. In other words, first-degree battery involves actions that create at least some risk of death and, consequently, evidence the accused's mental state

7

to engage in some life-threatening activity against the victim. *See Hoyle v. State*, 371 Ark. 495, 502, 268 S.W.3d 313, 318 (2007).

*Tigue* is distinguishable from the instant case. Here, there was evidence that Settles repeatedly slammed Jones's head into the wall, picked her up, and threw her down onto the wooden furniture. Then, because Jones did not get up and walk as Settles ordered her to, he punched her face. After the attack, Settles accompanied Jones to the hospital and told the hospital staff that she sustained the injuries when she fell in the bathroom. This court has recently held that lying about involvement in a crime is evidence of purposeful intent. *See Smith v. State*, 2024 Ark. 1, at 7, 680 S.W.3d 711, 716; *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). In *Tigue*, our supreme court held the following:

> Giving the phrase its plain meaning, the circumstances of first-degree battery must by necessity be more dire and formidable in terms of affecting human life. On this point, we stated in 1977 that the phrase relates to proof of the intent or mental state of the accused:
>
> > In the case at bar the phrase "circumstances manifesting extreme indifference to the value of human life" indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. The language of the Arkansas statute does not require reasonable men to speculate as to its common understanding or application.

319 Ark. at 151, 889 S.W.2d at 761–62 (quoting *Martin v. State*, 261 Ark. 80, 84, 547 S.W.2d 81, 83 (1977)).

In light of the evidence of Settles's brutal attack on Jones, the jury did not have to speculate in concluding that Settles manifested extreme indifference to the value of Jones's life. Accordingly, we affirm on this point.

B. Forfeiture by Wrongdoing

We now turn to Settles's assertion that Jones's statements should have been excluded. He contends that because there was no evidence that he caused Jones's unavailability to testify, his Sixth Amendment right to confront the witness was violated, and this court must reverse. Settles's argument is not well taken.

Because this appeal raises a question of constitutional interpretation, it is subject to this court's de novo standard of review. *Vankirk v. State*, 2011 Ark. 428, at 4, 385 S.W.3d 144, 147. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). The Sixth Amendment provides that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination. *Id.* Further, if the witness is unavailable, his or her prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him. *Id.* Federal Rule of Evidence 804(b)(6) sets forth the federal rule regarding forfeiture by wrongdoing; however, Arkansas has not adopted the federal rule, and instead, our courts rely on common law.

Arkansas applied the forfeiture-by-wrongdoing doctrine in *Gore v. State*, 52 Ark. 285 (1889). In *Gore*, the appellant "absented himself," and the trial proceeded without him. Gore was found guilty. When Gore returned six months later, he demanded a new trial, asserting that pursuant to the Sixth Amendment, he had a right to be present at his trial and confront the witnesses. Our supreme court referred to the long-standing English rule from Lord

9

Morley's Case[3] and subsequent American cases, including *Reynolds v. United States*, 98 U.S. 145, 158 (1878), in which the Supreme Court held,

> The constitution gives the accused the right to a trial at which he shall be confronted with the witnesses against him; but, if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The constitution does not guaranty an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but, if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

This is a case of first impression in Arkansas, and the State cites *Scott v. State*, 139 N.E.3d 1148, 1154 (Ind. Ct. App. 2020), to support its argument that Settles forfeited his Sixth Amendment right to confront the witness. In *Scott*, the appellate court found that behavior similar to Settles's constitutes forfeiture by wrongdoing. Scott was convicted of domestic battery and obstruction of justice. Scott's victim, his girlfriend, Maria Cook, cooperated with law enforcement, providing information about the incident. Before the trial, Scott attempted to prevent her from testifying against him by offering money to her, and he persistently contacted Cook, urging her to retract her initial statement to the prosecutor. He pressured Cook not to attend court, hoping her absence would lead to the case's dismissal. During the six months before trial, Scott attempted to contact Cook 373 times, successfully contacting her 116 times. Cook was absent for three scheduled

---

[3]In *Lord Morley's Case*, 6 How. St. Tr. 769, 771 (H.L. 1666), the court concluded that a witness's having been "detained by the means or procurement of the prisoner" provided a basis to read testimony previously given at a coroner's inquest.

depositions and the trial itself; however, the court admitted her statements through other witnesses. The court determined that Scott forfeited his right to cross-examine Cook due to his own misconduct, even in the absence of threats of violence or harm.

As in *Scott*, Settles repeatedly told Jones to contact prosecutors and the court to have his charges dropped and the no-contact order removed. He expressed his belief that he could not be convicted for first-degree domestic battering if Jones refused to testify and hounded her not to testify. Settles lied and told her there was no punishment for disregarding a subpoena. He also promised her love, marriage, financial assistance, and medical care if she helped him get the charges dismissed. Additionally, Settles concocted a plan with "K Ray" to pretend to be a legal assistant and urged him to "stay on her" to sign an affidavit recanting her accusations. Eventually, Settles pressured Jones into not testifying against him, and the court did not err in determining that Settles's continual contact with Jones while he was awaiting trial was designed to keep her from testifying against him. Also similar to *Scott*, Settles did not coerce the witness with threats of physical violence or harm.

Having reviewed the record de novo, we cannot say that Settles's Sixth Amendment right of confrontation was violated. Accordingly, we find no error in the admission of Jones's prior statements and affirm.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Law Offices of John Wesley Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.